UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE MANPOWER OF LANSING, MI, INC.,    )
DATA BREACH LITIGATION,                )

                                     )        No. 1:25-cv-956

                                     )

                                   )

                                   )        Honorable Paul L. Maloney

                                   )

                                   )

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

This is a class action related to an incident where bad actors stole personally identifiable information ("PII") held by Defendant, Manpower of Lansing, MI, Inc. Plaintiffs allege that their information, along with the information of tens of thousands of others similarly situated, was among the stolen PII. Defendant moved to dismiss, arguing that Plaintiffs failed to allege a concrete injury-in-fact traceable to Defendant and failed to state a claim under the various Michigan law causes of action in the complaint. (ECF No. 22). While the Court finds that Plaintiffs have pled sufficient facts to establish standing, those facts do not suffice to establish all of Plaintiff's claims under Michigan law. Plaintiffs have pled sufficient facts to sustain their negligence theory, but not their implied contract or unjust enrichment theories. Defendant's motion will thus be granted in part and denied in part.

**I.**

Courts must dismiss cases over which they lack subject matter jurisdiction whether the grounds are presented in a motion, *see* Fed. R. Civ. P. 12(b)(1), or raised *sua sponte, see id.* 12(h)(3); *Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010) ("Courts have an independent

1

obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it."). Challenges to subject matter jurisdiction may be facial or factual. *Gentek Bldg. Prod., Inc. v. Sherwin–Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). With a facial challenge, the factual allegations of the complaint are taken as true. *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 440 (6th Cir. 2012). With a factual challenge, courts do not have to accept the allegations as true and may "weigh evidence to confirm the existence of the factual predicates for subject-matter jurisdiction." *Id.*

Motions to dismiss for failure to state a claim are governed by Federal Rule of Civil Procedure 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true" to plausibly suggest that the plaintiff is entitled to the relief requested. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Facts "merely consistent with" the defendant's liability suggest only possibility, not plausibility, and thus fail this test. *Id.* In assessing whether the complaint contains sufficient factual matter, courts need only accept factual allegations as true and not legal conclusions or unwarranted inferences. *Kottmayer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006).

## II.

This is a putative class action with eleven named Plaintiffs. Defendant is a staffing agency franchise. Defendant, Manpower of Lansing, MI, Inc., is a staffing agency franchise. Defendant requires that prospective employees, applicants, placement candidates, and other clients submit PII to receive employment or services. (ECF No. 21 ¶¶ 31-33). Plaintiffs provided PII to Defendant while seeking employment or services from Defendant. Three Plaintiffs, Mary Brooks, Amy Doublin, and Shanna Harmon, are parties to Arbitration

2

Agreements with Defendant, signed as part of the process of obtaining employment. (ECF No. 22-2).

Between December 29, 2024 and January 12, 2025, Defendant was the target of a ransomware attack. (ECF No. 21 ¶ 40). Defendant discovered the breach on January 20, 2025, and subsequently learned that a group of cybercriminals, RansomHub, stole data pertaining to approximately 144,000 individuals. (*Id.* ¶¶ 42-43). Defendant did not send notification letters to people whose data was stolen until August of 2025. (*Id.* ¶ 53). Plaintiffs allege that this data breach was preventable through reasonable security measures that Defendants did not implement. (*E.g., id.* ¶ 50). Plaintiffs allege that cybercriminals can use the PII Defendants held to accomplish many things, including fraud, identity theft, and targeted scam calls and phishing operations. (*See id.* ¶¶ 91-125). Each named Plaintiff alleges that they were harmed by the data breach because the value of their PII was diminished, they lost privacy, they face an increased risk of fraud and identity theft, they lost time and money mitigating the effects of the breach, and they are dealing with increasing spam calls, texts, and emails. (*See, e.g., id.* ¶¶ 152, 161, 173). One Plaintiff, Fredrick Cooper, alleges that an unauthorized actor charged thirty dollars to his checking account and that he has received communications regarding loan inquiries he did not make. (*Id.* ¶ 186).

## III.

### A.  Plaintiffs Allege Sufficient Facts to Establish Standing.

Courts may only resolve "Cases" and "Controversies" as those terms are used in Article III of the Constitution. *TransUnion LLC v. Ramirez,* 594 U.S. 413, 423 (2021). When a plaintiff brings a claim to a federal court, that plaintiff must have standing to create

a justiciable case or controversy. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). Constitutional standing has three elements: the plaintiff must suffer a concrete and particularized injury in fact which is actual or imminent, that injury must have been caused by the conduct complained of, and it must be likely that a favorable decision would redress the injury. *Id.* at 560-61. "Class representatives must demonstrate individual standing vis-à-vis the defendant." *Soehnlen v. Fleet Owners Ins. Fund*, 844 F.3d 576, 582 (6th Cir. 2016) (citation modified). If any injury in fact is "highly conjectural, resting on a string of actions the occurrence of which is merely speculative," the plaintiff will not have standing. *Grendell v. Ohio Supreme Ct.*, 252 F.3d 828, 833 (6th Cir. 2001).

The United States Supreme Court has addressed the line between a speculative and concrete injury in fact multiple times. While future injuries may be sufficiently concrete, they must be "*certainly impending*;" "*possible* future injur[ies]" are not enough. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). The "certainly impending" standard requires more than a showing that a future injury has an objectively reasonable likelihood. *See id.* at 410-11. However, in suits for damages, a "risk of future harm, standing alone, cannot qualify as a concrete harm" unless "the exposure to the risk of future harm itself causes a *separate* concrete harm." *TransUnion, LLC*, 594 U.S. at 436.

The Supreme Court has not addressed the line between speculative and concrete injury in a data breach case; the Sixth Circuit has, albeit in an unpublished opinion. *See Galaria v. Nationwide Mut. Ins. Co.*, 663 F. App'x 384 (6th Cir. 2016). In *Galaria*, hackers infiltrated the defendant's network and stole the personal information of over one million people, including the named plaintiffs in the class action. *Id.* at 386. The court found that

4

the plaintiffs' "allegations of a substantial risk of harm, coupled with reasonably incurred mitigation costs, are sufficient to establish" standing, at least at the pleading stage. *Id.* at 388. The court explained that the theft of the plaintiffs' personal data by bad actors cleared the bar from *Clapper* that plaintiffs must allege more than a possible future injury because "[t]here is no need for speculation where Plaintiffs allege that their data has already been stolen and is now in the hands of ill-intentioned criminals. . . . Where a data breach targets personal information, a reasonable inference can be drawn that the hackers will use the victims' data for the fraudulent purposes alleged in the Plaintiffs' complaints." *Id.* The costs plaintiffs allegedly expended to mitigate that harm were not attempts to "manufacture standing" but "concrete injur[ies] suffered to mitigate an imminent harm" that "satisfy the injury requirement of Article III standing." *Id.* at 389.

The facts of *Galaria* are very close to those here. Plaintiffs allege that a group of cybercriminals stole their personal data while it was in Defendant's control and that they expended time and money to respond to the increased risk of fraud and identity theft. Those allegations were enough in *Galaria*, and assuming that *Galaria* is good law, the Court is inclined to follow it. But there is some question as to whether the holding in *Galaria* survived the Supreme Court's subsequent decision in *TransUnion*. *See Brickman v. Maximus, Inc.*, No. 2:21-cv-3822, 2022 WL 16836186, at *4 (S.D. Ohio May 2, 2022) ("[I]t is unknown, of course, whether the Sixth Circuit would view *TransUnion* as abrogating *Galaria*."). *TransUnion* "may have modified the standard for assessing whether a future harm constitutes an Article III injury-in-fact," but "that is a question for the Sixth Circuit to decide." *Brooks v. Peoples Bank*, 732 F. Supp. 3d 765, 775 (S.D. Ohio 2024). Courts in this circuit,

like the courts in *Brickman* and *Brooks,* continue to apply *Galaria. See, e.g., Haney v. Charter Foods N., LLC,* 747 F. Supp. 3d 1093, 1105 (E.D. Tenn. 2024) ("*Galaria* is consistent with *TransUnion* and still good law."); *Viviali v. One Point HR Sols., LLC,* No. 2: 24-185-DCR, 2025 WL 1158740, at *4 (E.D. Ky. Apr. 21, 2025) ("*TransUnion* did not abrogate *Galaria.*"); *In re Numotion Data Incident Litig.,* No. 3:24-cv-00545, 2025 WL 57712, at *5 (M.D. Tenn. Jan. 9, 2025) ("*TransUnion* does not invalidate *Galaria.*").

Defendant does not discuss *Galaria* in its briefing, though one of the cases Defendant relies on in its standing arguments does address it. *See Rodriguez v. CRG Lynwood LLC,* No. 24-11576, 2025 WL 2700614, at *5 (E.D. Mich. Sep. 22, 2025). In *Rodriguez,* the court held that the risk of future fraud from a data breach was not substantial enough to establish an injury in fact for standing purposes. *Id.* But key to the court's reasoning was that three years had passed since the data breach without any instance of identity theft or fraud coming to fruition. *Id.* The extended length of time without incident seriously undermined the key inference in *Galaria* that criminals would actually use the stolen data for criminal purposes. *See* 663 F. App'x at 386. With that inference out, the court in *Rodriguez* determined that the risk of future fraud was not substantial. 2025 WL 2700614, at *5.

The key distinguishing facts from *Rodriguez* are not present here. The data breach allegedly took place between December 29, 2024 and January 12, 2025, just over one year ago. (ECF No. 21 ¶ 3). All named Plaintiffs allege that they have experienced an increase in incoming spam calls, texts, and emails, suggesting that criminals are using or attempting to use their data. At least one named Plaintiff alleges that he experienced a fraudulent charge to his checking account and received communications about loan inquiries despite not

applying for any loans. (*Id.* ¶ 186). The facts as alleged are enough to sustain the reasonable inference that the risk of identity theft remains substantial, so *Rodriguez* does not suggest a different result on standing than in *Galaria*.

That leaves the traceability and redressability elements of standing; Plaintiffs satisfy those as well. Traceability is not synonymous with causation as the term is typically used in tort law. *See Galaria*, 663 F. App'x at 390 (citing *Wuliger v. Mfrs. Life Ins. Co.*, 567 F.3d 787, 796 (6th Cir. 2009)). Traceability sets a lower bar than but-for causation but requires more than speculation. *Galaria*, 663 F. App'x at 390. Here, Plaintiffs' allegations that Defendants failed to properly secure Plaintiffs' PII and that the data breach occurred as a result of that failure are sufficient to establish traceability. *See id.* As to redressability, Plaintiffs seek monetary compensation for their alleged injuries, so a favorable ruling would redress their injuries; Defendant does not dispute this element. With sufficient allegations for each element of standing, Plaintiffs thus have enough for the Court to consider the merits of their claims, to which the Court now turns.

### B.  Plaintiffs Allege Sufficient Facts to State a Negligence Claim Under Michigan Law.

Initially, the Court must determine which state law governs the claims in this case. Ordinarily, courts apply the choice of law rules of the state in which they sit. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Under Michigan's choice of law rules, courts apply Michigan law unless there is a "rational reason" to apply the law of a different jurisdiction. *Sutherland v. Kennington Truck Serv.*, 562 N.W.2d 466, 471 (Mich. 1997) (citing *Olmstead v. Anderson*, 400 N.W.2d 292, 302 (Mich. 1987)). Here the Defendant is a Michigan corporation, and most of the named Plaintiffs are Michigan residents. The parties

do not argue that any other state has an interest in applying its law. Michigan clearly has an interest in applying its law to the alleged conduct of a corporation operating in its borders and providing redress to the Michigan Plaintiffs, so Michigan law applies. *See, e.g., In re Flagstar Dec. 2021 Data Sec. Incident Litig.*, No. 22-cv-11385, 2024 WL 5659583, at *10 (E.D. Mich. Sep. 30, 2024).

Under Michigan law, a negligence claim has the four familiar elements of duty, breach, causation, and damages. *Henry v. Dow Chem. Co.*, 701 N.W.2d 684, 688 (Mich. 2005). "[N]egligence per se is not an independent cause of action" but instead a means of establishing the duty and breach elements. *Abnet v. Coca-Cola Co.*, 786 F. Supp. 2d 1341, 1345 (W.D. Mich. 2011). Defendants do not claim that Plaintiffs have failed to allege the duty and breach elements, so the Court considers their attacks on the remaining elements.

The bulk of Defendant's arguments relate to damages, in particular the principle in Michigan law that plaintiffs in negligence cases may only recover for present injuries rather than "injuries they may suffer in the future." *Henry*, 701 N.W.2d at 688. This principle also bars damages "incurred in anticipation of possible future injury rather than in response to present injuries." *Id.* at 689. The Michigan Court of Appeals has found that expenses to mitigate risks from private information being placed on the internet, without any allegation that the information had been used "for an improper purpose such as identity theft," were "incurred in anticipation of possible future injury" rather than constituting a present injury. *Doe v. Henry Ford Health Sys.*, 865 N.W.2d 915, 921 (Mich. Ct. App. 2014); *see Nyman v. Thomson Reuters Holdings, Inc.*, 942 N.W.2d 696, 706 (Mich. Ct. App. 2019) (finding that plaintiffs failed to establish a present injury in incurring costs based on risks presented

by digits of their social security numbers being posted online because they failed to allege that the information was used improperly). In an unpublished opinion, the Michigan Court of Appeals considered a data breach situation similar to the one here, where attackers deliberately stole private information held by a company. *See Rakyta v. Munson Healthcare*, No. 354831, 2021 WL 4808339, at *1 (Mich. Ct. App. Oct. 14, 2021). The plaintiffs in *Rakyta* alleged that they were at increased risk of fraud and identity theft, and that they had expended time and money taking reasonable measures to reduce that risk. *Id.* at *3. But those plaintiffs did not allege that anyone had "been a victim of identity theft." *Id.* Absent an allegation like that, plaintiffs presented only "possible future injuries and the prophylactic measures" taken to mitigate them rather than the required present injury. *Id.*

This principle presents a challenge for Plaintiffs: their core allegation is that they are subject to an increased *risk* of fraud and have had to take measures to abate that risk. Those harms, while sufficient to establish constitutional standing, run headlong into the present injury rule from *Henry*. Plaintiffs must rely on something else. Each named Plaintiff relies on five allegations: diminution to the value of their PII, loss of privacy, "continuous imminent and impending injury" from the risk of identity theft, lost time and expenses to mitigate the identity theft risk, and "dealing with increasing spam calls, texts, and emails." (*E.g.*, ECF No. 21 ¶¶ 152, 161, 173, 185, 198, 210, 222, 234, 246, 260, 272). The allegations of "imminent and impending injury" and expenses dealing with the risk of identity theft are not sufficient under the *Henry* rule and under the holding in *Rakyta*.

Diminution to the value of their PII could potentially hold promise, but Plaintiffs primarily define the value of their PII in the complaint as the value it holds on the black

market. (*See, e.g.,* ECF No. 21 ¶¶ 104-05, 107-09). While Plaintiffs arguably portray PII as a legitimate financial asset in other parts of the complaint, (*see id.* ¶¶ 100-01), Plaintiffs do not allege that they intend to sell or otherwise leverage the financial value of their PII, in legal marketplaces or elsewhere. This presents a serious problem for any theory of injury based on diminution in value of the PII. *See Rodriguez,* 2025 WL 2700614, at *5 (finding that plaintiff did not have standing to bring claims based on diminution in value of information when she did not allege the intent to sell it); *Lochridge v. Quality Temp. Servs., Inc.,* No. 22-cv-12086, 2023 WL 4303577, at *4 n.2 (E.D. Mich. June 30, 2023) ("Plaintiff does not allege any specific facts showing he planned to sell his information, just that it must have decreased in value because of the data breach. . . . [T]he court does not find that this suffices as an independent injury in fact sufficient to confer standing in this case."). Plaintiffs would need to allege a more concrete loss in their ability to gain value from their PII to establish an actual injury. *See Flagstar,* 2024 WL 5659583, at *5 (finding that a plaintiff who alleged that the diminished value of his PII hurt his credit score established an actual injury, but plaintiffs who only alleged that "their PII lost monetary value" did not).

Loss of privacy could be an injury, but merely having PII viewed by third parties is insufficient. *Rakyta,* 2021 WL 4808339, at *7. In *Rakyta,* the plaintiff alleged that "unknown third parties saw her confidential information" but "did not allege that the unknown third parties did anything with that information that injured her." *Id.* The court held this was insufficient to establish "damages that were recoverable under Michigan law." *Id.* Federal courts applying Michigan law in data breach cases have also found that losses of privacy are insufficient to satisfy the injury requirement for negligence claims. *See Rodriguez,* 2025 WL

2700614, at *7-8; *In re Grede Holdings LLC Data Breach Litig.*, No. 25-cv-10831, 2026 WL 396292, at *2 (E.D. Mich. Feb. 12, 2026). Plaintiffs fail to elaborate on the nature of their lost privacy enough to distinguish this case from *Rakyta*, *Rodriguez*, and *Grede*.

That leaves the spam calls, texts, and emails, which Plaintiffs allege increased after the data breach. These are "cognizable injuries," at least for standing purposes. *Flagstar*, 2024 WL 5659583, at *5; *see also Dickson v. Direct Energy, LP*, 69 F.4th 338, 345-46 (6th Cir. 2023) (discussing the nature of harms flowing from unwanted calls and texts). Plaintiffs allege that the spam increased after the data breach and that they are presently dealing with it, so it is not solely a future injury. The Court finds that this is sufficient to constitute a present injury. The purposes of the requirement for present injury are to provide brightline rules regarding which plaintiffs have actually experienced an invasion of their rights and to avoid situations where courts must make determinations about what risks are high enough to constitute injuries. *See Henry*, 701 N.W.2d at 689-91. Finding that the present experience of increasing spam communications constitutes a present injury complies with the rule as articulated in *Henry* and with its purposes. Plaintiffs have experienced some actual invasion of their rights and the Court need not assess whether any level of risk is sufficient.

This conclusion conflicts with the court's finding in *Grede* that "a sharp uptick in suspicious spam calls and texts" did not constitute an actual and present injury for the purposes of Michigan law negligence. 2026 WL 396292, at *3. In reaching that conclusion, the court quoted *Polkowski v. Jack Doheny Cos.*, No. 2:25-cv-10516, 2025 WL 3079358, at *8 (E.D. Mich. Nov. 4, 2025), for the proposition that "disclosure of stolen information alone is not a present injury if no actual identity theft resulted from the disclosure." *Grede*,

2026 WL 396292, at *3. The court in *Grede* analyzed the plaintiffs' allegations not for whether they constituted present injuries, but for whether they constituted *identity theft or fraud. See id.* (explaining that the plaintiffs' allegations of fraudulent charges and increasing spam did not raise a plausible inference "that they are victims of 'actual identity theft or fraud'"). *Grede* reads too much into the line from *Polkowski*; there is no rule that the only allowable injuries in data breach cases must fit a strict category of identity theft or fraud. In *Polkowski*, the plaintiff only alleged that his PII was "posted to the dark web." 2025 WL 3079358, at *8. That plaintiff did not allege *any* consequence from the PII appearing on the dark web, and the court concluded that "Michigan courts reject such an injury where the plaintiff does not allege a present injury to 'credit or identity.'" *Id.* (quoting *Doe*, 865 N.W.2d at 601). But in both *Doe* and *Polkowski*, the lines about injury to credit or identity and actual identity theft were merely examples of possible actual injuries flowing from the release of personal information on the internet which the plaintiffs had not alleged; there is no indication that they were meant to be exhaustive lists of legally acceptable injuries. *See Doe*, 865 N.W.2d at 600-01; *Polkowski*, 2025 WL 3079358, at *8. The Court is thus not persuaded by the contrary reasoning in *Grede*.

All Plaintiffs allege that they have suffered from the increase in spam, so all Plaintiffs adequately allege an injury. Additionally, Plaintiff Fredrick Cooper alleges that "an unauthorized actor charged approximately $30 to his [checking] account" and that he has received "an increase in calls and emails regarding loan inquiries" despite not applying for any loans. (ECF No. 21 ¶ 186). This suggests that there was actual identity theft or fraud, like

the plaintiffs alleged in *Kingen v. Warner Norcross + Judd LLP*, No. 1:22-cv-01126, 2023 WL 11965363, at *4-5 (W.D. Mich. Oct. 5, 2023).

Of course, for each injury, Plaintiffs must satisfy the causation requirement. This requires both proximate and factual, "but for" causation. *Ray v. Swager*, 903 N.W.2d 366, 371 (Mich. 2017). Defendant argues Plaintiffs cannot satisfy the factual causation element because, in its view, Plaintiffs rely solely on *post hoc, ergo propter hoc* reasoning, which Michigan law generally finds insufficient. *See, e.g., Craig ex rel. Craig v. Oakwood Hosp.*, 684 N.W.2d 296, 312 (Mich. 2004) ("It is axiomatic in logic and in science that correlation is not causation."); *West v. Gen. Motors Corp.*, 665 N.W.2d 468, 472 (Mich. 2003) (finding that "a temporal relationship, standing alone, does not demonstrate a causal connection"). In *Grede*, the court found that a "fraudulent bank charge" and "unsolicited spam calls" were not caused by a data breach when the plaintiffs failed to allege any connection other than the charges and calls occurring after the breach. 2026 WL 396292, at *3.

Here, Plaintiffs have alleged sufficient facts to sustain a plausible theory of causation other than the fallacious *post hoc, ergo propter hoc*. Plaintiffs allege facts connecting data breaches to increases in spam communications. Plaintiffs allege that access to a person's PII allows criminals to better "harass or track" victims, (ECF No. 21 ¶ 94), and that access to the particular PII involved in this data breach allows criminals to target victims in social engineering attacks "through means such as spam phone calls and text messages or phishing emails," (*id.* ¶ 95; *see also id.* ¶ 107 ("PII is particularly valuable because criminals can use it to target victims with various types of fraud and scams.")). Plaintiffs identify customers of PII on the black market as not just identity thieves, but "scam telemarketers." (*Id.* ¶¶ 115,

118). Plaintiffs also allege that access to a social security number, one of the types of PII at issue here, is sufficient to enable thieves to steal money from a bank account. (*Id.* ¶ 112). Plaintiffs may not have a separate allegation explicitly stating that these general observations about the nature of cybercrime apply to this case and caused their injuries, but they need only allege enough factual matter to establish a plausible theory of liability. The allegations that criminals generally use PII to conduct spam-based attacks or provide PII to scammers using spam communications plausibly suggest that the increased spam communications would not have happened but for the data breach. Plaintiffs thus all alleged an injury and a plausible theory of causation. Defendant has not attacked the other elements of Plaintiffs' negligence claim, so Defendant's motion will be denied as to the negligence claim. It will be granted, however, as to Plaintiffs' negligence per se claim to the extent that Plaintiff asserts it as an independent cause of action.

### C.  Plaintiffs Fail to State a Breach of Implied Contract Claim.

In Michigan, a breach of contract claim has three elements: the existence of a contract, breach of the contract, and damage resulting from the breach. *Bank of Am., NA v. First Am. Title Ins. Co.*, 878 N.W.2d 816, 829 (Mich. 2016). Contracts may be implied, but "only if there is no express contract covering the same subject matter." *Belle Isle Grill Corp. v. City of Detroit*, 666 N.W.2d 271, 280 (Mich. Ct. App. 2003). Implied contracts must still "satisfy the elements of mutual assent and consideration." *Mallory v. City of Detroit*, 449 N.W.2d 115, 118 (Mich. Ct. App. 1989).

Assuming without deciding that Plaintiffs have adequately alleged mutual assent, they have not adequately alleged independent consideration supporting an implied contract. By

14

their own allegations, Defendant required Plaintiffs to submit PII "as a condition of receiving staffing services." (ECF No. 21 ¶ 32). The exchange of PII was an integral part of the contractual relationships between Plaintiffs and Defendant. (*Id.* ¶¶ 31-33, 335). "Any purported implied contract would be duplicative of the parties' express employment relationship and unsupported by independent consideration. Plaintiff[s'] provision of PII was merely incidental to their employment and cannot serve as consideration for a separate agreement to safeguard that data." *Polkowski*, 2025 WL 3079358, at *10; *see Grede*, 2026 WL 396292, at *4; *Kingen*, 2023 WL 11965363, at *6. Also, Plaintiffs allege that Defendant had a statutory duty to implement "reasonable and appropriate measures" to protect Plaintiffs' PII. (ECF No. 21 ¶ 79; *see id.* ¶¶ 68-80). Both the provision of the PII and the Defendant's supposed promise to safeguard it would thus be subsumed in Michigan's preexisting duty rule. *See Romero v. Buhimschi*, 396 F. App'x 224, 233 (6th Cir. 2010) ("The preexisting duty rule states that a contract fails for lack of consideration where the party promises something that he is already legally bound to do. This rule applies whether the preexisting duty is based on statute or contract . . . ." (citation omitted)).

The contractual and statutory allegations distinguish this case from *Hummell v. Teijin Automotive Technologies, Inc.*, No. 23-cv-10341, 2023 WL 6149059, at *9 (E.D. Mich. Sep. 20, 2023), where the court concluded a plaintiff had adequately alleged consideration for an implied contract in a data breach case against her employer. In *Hummell*, the defendant only argued that the common law duty to safeguard the plaintiff's PII precluded a finding of adequate consideration rather than alleging the existence of a preexisting

15

contractual or statutory duty. *Id.*[1] This case features preexisting contractual *and* statutory duties. Without consideration, Plaintiffs' implied contract theory fails. Defendant's motion will thus be granted with regard to the breach of implied contract count.

### D.   Plaintiffs Fail to State an Unjust Enrichment Claim.

To establish an unjust enrichment claim, Plaintiffs must prove that Defendant received a benefit from them and that inequity resulted from Defendant's retention of it. *See Belle Isle Grill Corp.,* 666 N.W.2d at 280. Here, Plaintiffs fail to show that Defendant received a benefit *from Plaintiffs.* Plaintiffs' theory is that Defendant "enriched itself" by choosing not to invest in adequate data security measures. (ECF No. 21 ¶ 354). That allegation establishes only that Defendant gained a benefit from its "internal business decisions, not a transfer of value" from Plaintiffs. *Polkowski,* 2025 WL 3079358, at *11. Defendant also only received the PII from Plaintiffs because they "work[ed] for or [sought] services from Defendant," (ECF No. 21 ¶ 353), which means it received a benefit from the agreement, not from Plaintiffs, *see Karaus v. Bank of N.Y. Mellon,* 831 N.W.2d 897, 906 (Mich. Ct. App. 2012); *Lochridge,* 2023 WL 4303577, at *7; *Polkowski,* 2025 WL 3079358, at *11; *Grede,* 2026 WL 396292, at *4-5. Defendant's motion will thus be granted as to the count for unjust enrichment.

---

[1] *Hummell* also relied on two cases from District Courts in Kentucky in concluding that the plaintiff had adequately pled consideration, but those cases did not discuss consideration. *Compare* 2023 WL 6149059, at *9, *with McKenzie v. Allconnect, Inc.,* 369 F. Supp. 3d 810, 821 (E.D. Ky. 2019), *and Bowen v. Paxton Media Grp., LLC,* 2022 WL 4110319, at *7 (W.D. Ky. Sept. 8, 2022).

### E.  Plaintiffs Voluntarily Dismissed Their Invasion of Privacy Claim.

Defendants moved to dismiss Plaintiffs' claim for invasion of privacy. In their response, Plaintiffs "voluntarily dismiss[ed]" the claim and offered no defense of it. (ECF No. 23 at PageID.396). The Court will thus grant Defendant's motion as to the invasion of privacy claim.

### F.  Plaintiffs Brooks, Harmon, and Doublin's Claims Will Be Dismissed So They May Proceed to Arbitration.

Defendant argues that three Plaintiffs, Brooks, Harmon, and Doublin, are parties to an arbitration agreement with Defendant that covers "all disputes between them of any kind or type." (*E.g.*, ECF No. 22-2 at PageID.299). Plaintiffs do not dispute that the agreements are as Defendant presents them, they are valid, and Brooks, Harmon, and Doublin are parties to them. Plaintiffs instead argue that the agreements do not cover this dispute.[2]

Under 9 U.S.C. § 4, courts may "make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." When courts order the parties to proceed to arbitration, and no party sought a stay of proceedings, dismissal is an appropriate remedy. *See Boykin v. Fam. Dollar Stores of Mich., LLC*, 3 F.4th 832, 836-37 (6th Cir. 2021); *Hilton v. Midland Funding, LLC*, 687 F. App'x 515, 518-19 (6th Cir. 2017).

Courts "may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate *that dispute*." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 297 (2010). Courts begin with the plain text of the agreement, and if its

---

[2] Plaintiffs cite caselaw indicating that state contract law applies when there is a dispute over whether an arbitration clause was validly obtained, (*see* ECF No. 23 at PageID.396), but make no argument that the agreement was unconscionable, induced by fraud, or otherwise invalidly obtained.

meaning is unambiguous, the analysis ends. *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002). If it is ambiguous, then "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). When determining the scope of a broad arbitration agreement, "the presumption of arbitrability is particularly applicable, and only an express provision excluding a particular grievance from arbitration or the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *VanPamel v. TRW Vehicle Safety Sys., Inc.*, 723 F.3d 664, 668 (6th Cir. 2013) (citation modified). Even broad agreements have limits, and courts ask in defining those limits "if an action could be maintained without reference to the contract or relationship at issue. If it could, it is likely outside the scope of the arbitration agreement." *Fazio v. Lehman Bros.*, 340 F.3d 386, 395 (6th Cir. 2003) (citing *Ford v. NYLCare Health Plans of Gulf Coast, Inc.*, 141 F.3d 243, 250-51 (5th Cir. 1998)).

However, the presumption flips when the question is whether the parties have agreed to arbitrate whether the dispute is arbitrable. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944-45 (1995). "Courts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so." *Id.* at 944 (citation modified). If such evidence exists, courts must give effect to the agreement, "even if a particular argument for arbitration seems to be wholly groundless." *Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 844 (6th Cir. 2020). Unmistakable evidence exists when contract language explicitly delegates the ability to decide the arbitrability of particular disputes to the arbitrator or the contract incorporates such language by reference. *See id.* at

844-46; *McGee v. Armstrong*, 941 F.3d 859, 866-67 (6th Cir. 2019). "Only a specific challenge to a delegation clause brings arbitrability issues back within the court's province," and parties seeking to avoid the effects of such a clause "should raise a challenge at least in its opposition to a motion to compel arbitration." *Swiger v. Rosette*, 989 F.3d 501, 505-06 (6th Cir. 2021).

Here, the agreements contain explicit language delegating the ability to decide the arbitrability of particular disputes to the arbitrator. "The Arbitrator shall have the sole and exclusive authority to decide questions regarding the enforceability of this Agreement, the arbitrability of a particular dispute, and the interpretation of terms of this Agreement . . . ." (ECF No. 22-2 at PageID.301, 307, 313). Because Plaintiffs challenge only the scope of arbitrable disputes and not the validity of the agreement or any part of it, the Court must give effect to the delegation clause and send the dispute over the gateway issue of arbitrability to arbitration. *See Swiger*, 989 F.3d at 505.

It is not clear that the outcome would be different if the Court decided the issue of arbitrability. Plaintiffs argue that because prospective employees could state the same claims as those whom Defendant actually employed, Plaintiffs' claims "can be separated from the employment relationship and are not subject to arbitrability." (ECF No. 23 at PageID.397). But Defendant only retained Plaintiff's PII in connection to an actual or prospective employment relationship. There is thus inevitably a "reference" to the "relationship at issue" in Plaintiffs' claims. *Fazio*, 340 F.3d at 395. Other courts have reached this conclusion in similar circumstances when faced with similar arguments. *See Saunders v. Collabera, Inc.*, No. 20-15207 (MAS) (DEA), 2021 WL 3291685, at *4 (D.N.J. July 31, 2021) (finding that

19

plaintiffs' claims in a data breach case were connected to the employment relationship even when former employees could have brought the same claims). Defendant's motion will thus be granted to the extent it sought to compel arbitration of Plaintiffs Brooks, Harmon, and Doublin's claims.

## IV.

Plaintiffs have pled sufficient facts to establish standing and to state a negligence claim under Michigan law, at least with regard to certain alleged harms. They have not pled sufficient facts to state a claim for breach of implied contract or for unjust enrichment, they voluntarily dismissed their claim for invasion of privacy, and their claim for negligence per se is not a separate cause of action under Michigan law. Finally, Plaintiffs Brooks, Harmon, and Doublin's claims must be dismissed so that, as they agreed, an arbitrator may decide whether this dispute with Defendant is arbitrable.

Defendant's motion to dismiss (ECF No. 22) is **GRANTED IN PART** and **DENIED IN PART**. Plaintiffs' claims for negligence per se, invasion of privacy, breach of implied contract, and unjust enrichment are **DISMISSED**. Plaintiffs Brooks, Harmon, and Doublin's claims are **DISMISSED** and they shall proceed to arbitration. The remaining Plaintiffs' claims for negligence under Michigan law remain in the case.

**IT IS SO ORDERED.**

Date: March 19, 2026                              /s/ Paul L. Maloney
                                                            Paul L. Maloney
                                                            United States District Judge

20