**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**

|  |  |
|---|---|
| IN RE MANPOWER OF LANSING, MI, INC., DATA BREACH LITIGATION | ) ) ) ) ) ) ) ) ) ) ) |

**Civil Action No.**
**1:25-cv-956-PLM-PJG**

### MANPOWER OF LANSING, MI, INC.'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFFS' CLASS ACTION COMPLAINT

Defendant Manpower of Lansing, MI, Inc. ("**Manpower**"), through its undersigned counsel, answers Plaintiffs Sara Conrad, Christine Cooper, Fredrick Cooper, Deanna Ghinelli, Courtney Howard, Lorna Lane, Latoya Middleton, and Christopher Platter (collectively "**Plaintiffs**")[1] Consolidated Class Action Complaint as follows:

### NATURE OF THE ACTION

1. Plaintiffs bring this class action lawsuit against Manpower for its failure to properly secure and safeguard Plaintiffs' and other similarly situated current and former job applicants and employees' ("Class Members") personally identifiable information ("PII") from hackers.

**Answer: Manpower admits only that this action arises from an alleged cyberattack which targeted Manpower's network. Manpower denies all the remaining allegations contained in this paragraph.**

---

[1] On March 19, 2026, Plaintiffs Mary Brooks, Amy Doublin, and Shanna Harmon were dismissed per the Court's Order (ECF No. 25).

37872933.1

2.    Defendant is a franchise of one of the world's largest staffing companies and is part of ManpowerGroup, a multinational corporation with over 600,000 workers in more than 2,700 offices serving over 100,000 clients worldwide, with reported revenues of $17.9 billion in 2024.

**Answer: Manpower admits only that it is a staffing and recruiting company.**

3.    Between December 29, 2024, and January 12, 2025, Defendant suffered a ransomware attack in which unauthorized actors gained access to its network systems and exfiltrated files containing the PII of approximately 144,189 individuals (the "Data Breach").

**Answer: Manpower admits only that this action arises from an alleged cyberattack which targeted Manpower's network between December 29, 2024, and January 12, 2025. Manpower denies all the remaining allegations contained in this paragraph.**

4.    The PII stolen in the Data Breach included Plaintiffs' and Class Members' names, driver's license numbers, and Social Security numbers.

**Answer: Manpower admits only that the information accessed by certain unauthorized individuals may have contained names, driver's license numbers, and Social Security numbers. Manpower denies the remaining allegations contained in this paragraph.**

5.    The Data Breach was perpetrated by the RansomHub ransomware group, which targeted the PII and subsequently claimed responsibility for the attack and threatened to release the stolen data unless a ransom was paid.

**Answer: Manpower lacks information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies the same.**

6.    Despite discovering the incident on January 20, 2025, Defendant did not complete its investigation until July 28, 2025—over six months after the breach occurred, and it did not

2

37872933.1

begin notifying affected individuals until August 11, 2025—almost seven months after the Data Breach.

**Answer: Manpower admits only that it promptly and diligently performed its investigation efforts and began notifying potentially impacted individuals on or around August 11, 2025. Manpower denies the remaining allegations contained in this paragraph.**

7.      Plaintiffs and Class Members now face a substantial and imminent risk of identity theft, financial fraud, unauthorized account access, and other personal, social, and financial harms that may persist for the rest of their lives.

**Answer: Denied.**

8.      Manpower has provided no assurance that all copies of the stolen data have been recovered or destroyed, nor that its data security measures have been sufficiently strengthened to prevent future breaches.

**Answer: Denied.**

9.      Plaintiffs and Class Members therefore suffer, and continue to face, ascertainable losses, including heightened risk of identity theft, out-of-pocket mitigation costs, lost time, and diminished value of their PII.

**Answer: Denied.**

10.      Plaintiffs seek redress for Manpower's inadequate safeguarding of Class Members' PII.

**Answer: Manpower admits only that Plaintiffs are seeking certain remedies, but denies that Plaintiffs are entitled to any such relief.**

11.      Manpower failed to implement reasonable security measures commensurate with the sensitivity of the data it held, particularly given that it operates its own data platform.

37872933.1

**Answer: Denied.**

12.     Had adequate safeguards been in place, Manpower would have prevented—and detected far earlier—the unauthorized access by ransomware actors.

**Answer: Denied.**

13.     Because of Manpower's negligent and reckless misconduct, and Plaintiffs and Class Members now face an ever increasing risk of fraud and identity theft.

**Answer: Denied.**

14.     Plaintiffs bring this action to seek redress on behalf of themselves and all similarly situated individuals whose PII was exfiltrated during the Data Breach.

**Answer: Manpower admits only that Plaintiffs are seeking certain remedies, but denies that Plaintiffs are entitled to any such relief.**

## PARTIES

16.     Plaintiff Mary Brooks is, and at all times relevant hereto was, a resident and citizen of Michigan. [2]

**Answer: On March 19, 2026, Plaintiff Brooks' claims were dismissed per the Court's Order (ECF No. 25).  Answering further, Manpower lacks information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies the same.**

17.     Plaintiff Sara Conrad is, and at all times relevant hereto was, a resident and citizen of Michigan.

---

[2] Plaintiffs' Complaint skips paragraph number 15. For the sake of uniformity, Manpower also skips paragraph number 15 in its Answer.

37872933.1

**Answer: Manpower lacks information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies the same.**

18.   Plaintiff Christine Cooper is, and at all times relevant hereto was, a resident and citizen of Michigan.

**Answer: Manpower lacks information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies the same.**

19.   Plaintiff Fredrick Cooper is, and at all times relevant hereto was, a resident and citizen of Michigan.

**Answer: Manpower lacks information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies the same.**

20.   Plaintiff Amy Doublin is, and at all times relevant hereto was, a resident and citizen of Indiana.

**Answer: On March 19, 2026, Plaintiff Doublin's claims were dismissed per the Court's Order (ECF No. 25).  Answering further, Manpower lacks information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies the same.**

21.   Plaintiff Deanna Ghinelli is, and at all times relevant hereto was, a resident and citizen of Michigan.

**Answer: Manpower lacks information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies the same.**

22.   Plaintiff Shanna Harmon is, and at all times relevant hereto was, a resident and citizen of Michigan.

5

37872933.1

**Answer: On March 19, 2026, Plaintiff Harmon's claims were dismissed per the Court's Order (ECF No. 25).  Answering further, Manpower lacks information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies the same.**

23.    Plaintiff Courtney Howard is, and at all times relevant hereto was, a resident and citizen of Michigan.

**Answer: Manpower lacks information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies the same.**

24.    Plaintiff Lorna Lane is, and at all times relevant hereto was, a resident and citizen of Michigan.

**Answer: Manpower lacks information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies the same.**

25.    Plaintiff Latoya Middleton is, and at all times relevant hereto was, a resident and citizen of Michigan.

**Answer: Manpower lacks information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies the same.**

26.    Plaintiff Christopher Platter is, and at all times relevant hereto was, a resident and citizen of Indiana.

**Answer: Manpower lacks information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies the same.**

27.    Defendant Manpower of Lansing, MI, Inc. is a Michigan corporation with its headquarters and principal place of business located at 741 N Cedar St., Suite 200, Lansing, Michigan 48906.

37872933.1

**Answer: Admitted.**

## JURISDICTION AND VENUE

28.    The Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. The number of class members is 144,189, and at least one member of the Class defined below is a citizen of a different state that is diverse from Defendant's citizenship, including Plaintiffs Doublin and Platter. Thus, minimal diversity exists under 28 U.S.C. §1332(d)(2)(A).

**Answer: Manpower does not contest the allegations contained in this paragraph.**

29.    This Court has general personal jurisdiction over Defendant because it is a Michigan corporation with its principal place of business located in Michigan.

**Answer: Manpower does not contest the allegations contained in this paragraph.**

30.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Defendant resides in this District, a substantial part of the events giving rise to this action occurred in this District, and Defendant is subject to the Court's personal jurisdiction with respect to this action.

**Answer: Manpower does not contest the allegations contained in this paragraph.**

## COMMON FACTUAL ALLEGATIONS

**A.  Defendant Collected, Maintained and Stored PII.**

31.    Defendant is a staffing agency that connects individuals with employers, requiring extensive collection of personal and financial information from individuals seeking employment placement services and from its customers.

**Answer: Manpower admits only that it is a staffing and recruiting company and that it receives and stores information in the course of its business. Manpower denies the remaining allegations contained in this paragraph.**

7

37872933.1

32.    In the course of its business operations, Defendant requires job applicants, temporary workers, placement candidates, and other clients to submit extensive sensitive personal and financial information as a condition of receiving staffing services, including information necessary for employment verification, background checks, payroll processing, and compliance with federal and state employment laws.

**Answer: Manpower admits only that it receives and stores information in the course of its business. Manpower denies the remaining allegations contained in this paragraph.**

33.    Specifically, individuals are required to provide their PII and other sensitive information for employment placement and staffing purposes, including but not limited to their names, addresses, Social Security numbers, dates of birth, driver's license numbers, passport numbers, employment history, educational background, professional references, and banking information for payroll purposes. Upon information and good faith belief, individuals seeking employment through Manpower are also required to submit medical test results, including for highly sensitive health conditions.

**Answer: Manpower admits only that it receives and stores information in the course of its business. Manpower denies the remaining allegations contained in this paragraph.**

34.    By collecting and storing this information, Defendant assumed a duty to securely maintain and protect the PII of individuals who had no choice but to provide this information as a mandatory condition of seeking employment and staffing services from Defendant.

**Answer: The allegations in this paragraph contain legal conclusions of the pleader to which no response is required. To the extent a response is required, Manpower denies the remaining allegations contained in this paragraph.**

8

37872933.1

35.    The PII that Defendant maintains is particularly sensitive and valuable, containing the complete identity profiles necessary for financial fraud, tax fraud, and synthetic identity theft, making Manpower an attractive target for ransomware groups seeking to obtain and monetize personal data.

**Answer: Manpower lacks information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies the same. Manpower further states that the allegations in this paragraph contain legal conclusions of the pleader to which no response is required. To the extent a response is required, Manpower denies the remaining allegations contained in this paragraph.**

36.    Defendant acknowledges through its privacy notices and communications its obligation to protect personal information and comply with applicable privacy laws and regulations, including those governing the protection of employee and applicant data.

**Answer: Manpower admits only that Plaintiffs are relying on certain documents, but refers to the contents of those documents for their content and meaning. Manpower denies as untrue any allegations contained in this paragraph that are contrary to or inconsistent with the terms of those documents.**

37.    Plaintiffs and Class Members, as current and former job seekers, employees, and temporary workers, whose relationships with Manpower required them to provide PII, relied on Defendant to implement and maintain reasonable and adequate security measures to keep their PII secure and protected from unauthorized access.

**Answer: Manpower admits only that it receives and stores information in the course of its business. Manpower lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph and therefore denies the same.**

37872933.1

**Manpower further states that the allegations in this paragraph contain legal conclusions of the pleader to which no response is required. To the extent a response is required, Manpower denies the remaining allegations contained in this paragraph.**

**B.  Defendant's Data Breach Exposed PII.**

38.     Defendant derives substantial economic benefit from its staffing operations, which require collecting and storing Plaintiffs and Class Members' PII as a necessary part of the employment placement and staffing processes.

**Answer: Manpower admits only that it receives and stores information in the course of its business. Manpower denies the remaining allegations contained in this paragraph.**

39.     By obtaining, collecting, and storing the PII of Plaintiffs and Class Members, Defendant assumed legal and equitable duties and knew or should have known it was responsible for protecting the PII from disclosure.

**Answer: The allegations in this paragraph contain legal conclusions of the pleader to which no response is required. To the extent a response is reqired, Manpower denies the remaining allegations contained in this paragraph.**

40.     In Defendant's data breach notification letter (the "Data Breach Notice"), Defendant admitted that between December 29, 2024 and January 12, 2025, Defendant suffered a ransomware attack when unauthorized actors gained access to its network systems.

**Answer: Manpower admits only that Plaintiffs are relying on certain documents, but refers to the contents of those documents for their content and meaning. Manpower denies as untrue any allegations contained in this paragraph that are contrary to or inconsistent with the terms of those documents.**

37872933.1

41.    The incident was discovered by Defendant on January 20, 2025, weeks after it occurred, when investigating an IT systems outage at its Lansing, Michigan franchise office.

**Answer: Manpower admits only that this action arises from an alleged cyberattack which targeted Manpower's network between December 29, 2024, and January 12, 2025. Manpower denies the remaining allegations contained in this paragraph.**

42.    The unauthorized actors accessed and exfiltrated files containing the PII of 144,189 individuals.

**Answer: Manpower lacks information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies the same.**

43.    On January 22, 2025, the ransomware cybercriminal group RansomHub claimed credit for the breach, allegedly exfiltrating 500 gigabytes of data.

**Answer: Manpower lacks information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies the same.**

44.    According to RansomHub, the data included "personal and corporate data (passport scans, IDs, SSNs, addresses, contact information, test results, and other data), years of corporate correspondence, financial statements, HR data analytics, as well as confidential contracts and non-disclosure agreements."

**Answer: Manpower lacks information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies the same. Manpower further admits only that Plaintiffs are relying on certain documents, but refers to the contents of those documents for their content and meaning. Manpower denies as untrue any allegations contained in this paragraph that are contrary to or inconsistent with the terms of those documents.**

37872933.1

45.      RansomHub ransomware group is a ransomware-as-a-service (RaaS) operation that has claimed responsibility for attacks on over 200 critical infrastructure organizations in the United States.

**Answer:** **Manpower lacks information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies the same.**

46.      RansomHub posted information about the Manpower breach on its dark web leak site after the Data Breach occurred.

**Answer:** **Manpower lacks information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies the same.**

47.      According to the joint cybersecurity advisory, RansomHub was first identified in February 2024. At the time of the advisory, RansomHub had "encrypted and exfiltrated data from at least 210 victims representing the water and wastewater, information technology, government services and facilities, healthcare and public health, emergency services, food and agriculture financial services, commercial facilities, critical manufacturing, transportation, and communications critical infrastructure sectors."

**Answer:** **Manpower lacks information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies the same. Manpower further admits only that Plaintiffs are relying on certain documents, but refers to the contents of those documents for their content and meaning. Manpower denies as untrue any allegations contained in this paragraph that are contrary to or inconsistent with the terms of those documents.**

48.      The advisory urges companies to take mitigation measures that include but are not limited to "implement[ing] a recovery plan to maintain and retain multiple copies of sensitive or

37872933.1

proprietary data and servers in a physically separate, segmented, and secure location (i.e., hard drive, storage device, the cloud)," "[r]equir[ing] all accounts with password logins (e.g., service accounts, admin accounts, and domain admin accounts) to comply with National Institute for Standards and Technology (NIST) standards for developing and managing password policies," and "segment[ing] networks."

**Answer: Manpower lacks information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies the same. Manpower further admits only that Plaintiffs are relying on certain documents, but refers to the contents of those documents for their content and meaning. Manpower denies as untrue any allegations contained in this paragraph that are contrary to or inconsistent with the terms of those documents.**

49.    Defendant failed to implement any of the advisor's recommendations or other adequate security measures to protect against ransomware attacks.

**Answer: Denied.**

50.    Defendant could have prevented this Data Breach by implementing reasonable security protocols, encrypting the PII in its possession, maintaining adequate monitoring systems, and following industry-standard security practices for ransomware prevention.

**Answer: Denied.**

51.    Indeed, in the Data Breach Notices, Defendant effectively acknowledges that it could have had enhanced security protocols prior to the breach as it stated that, after the breach, it implemented "enhanced security measures to help prevent a similar incident from occurring" again.

37872933.1

**Answer: Manpower admits only that Plaintiffs are relying on certain documents, but refers to the contents of those documents for their content and meaning. Manpower denies as untrue any allegations contained in this paragraph that are contrary to or inconsistent with the terms of those documents.**

52. As a result of Defendant's failures, a cybercriminal group accessed and stole files containing the PII of Plaintiffs and Class Members from Defendant's possession.

**Answer: Denied.**

53. Despite discovering the breach on January 20, 2025, Defendant took over seven months to notify affected individuals, with notification letters being sent on or about August 11, 2025.

**Answer: Manpower admits only that it promptly and diligently performed its investigation efforts and began notifying potentially impacted individuals on or around August 11, 2025. Manpower denies the remaining allegations contained in this paragraph.**

54. The lengthy delay in notification severely hampered victims' ability to take timely protective measures against identity theft and fraud.

**Answer: Denied.**

C. **Defendant Knew of Should Have Known of the Risk Because Institutions in Possession of PII.**

55. Given that Defendant was storing the PII of Plaintiffs and Class Members and knew or should have known of the serious risk and harm caused by a data breach, Defendant was obligated to implement reasonable measures to prevent and detect cyber-attacks, such as those recommended by the Federal Trade Commission (the "FTC") and promoted by data security experts and other agencies.

**Answer: Denied.**

14

37872933.1

56.     That obligation stems from the foreseeable risk of a data breach given that Defendant collected, stored, and had access to a wealth of highly sensitive personal records and data and, additionally, because other highly publicized data breaches put Defendant on notice that the personal and sensitive data it stores might be targeted by cybercriminals.

**Answer: Manpower lacks information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies the same.**

57.     Indeed, cyberattacks have become so notorious that the Federal Bureau of Investigation and United States Secret Service have issued warnings to potential targets, so they are aware of, and prepared for, a potential attack.

**Answer: Manpower lacks information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies the same.**

58.     Therefore, the increase in such attacks, and the attendant risk of future attacks, was widely known to the public and therefore to anyone in Defendant's industry, including Defendant.

**Answer: Manpower lacks information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies the same.**

59.     Despite the abundance and availability of information regarding cybersecurity best practices and the prevalence of data breaches, Defendant inexplicably failed to adopt sufficient data security processes by, without limitation:

   a. Failing to properly implement adequate access controls and monitoring systems;

   b. Failing to ensure the proper monitoring and logging of network traffic;

   c. Failing to ensure the proper monitoring and logging of file access and modifications;

   d. Failing to ensure the proper training of employees as to cybersecurity best

15

37872933.1

practices;

e.  Failing to ensure fair, reasonable, or adequate computer systems and data security practices to safeguard the PII of Plaintiffs and Class Members;

f.  Failure to timely and accurately disclose that Plaintiffs' and Class Members' PII had been improperly acquired or accessed;

g.  Knowingly disregarding standard information security principles by allowing inadequate security measures;

h.  Failing to provide adequate supervision and oversight of the PII with which they were entrusted.

**Answer: Denied.**

60.    Upon information and belief, Defendant further failed to ensure the proper implementation of sufficient processes to quickly detect and respond to data security incidents, to ensure the proper encryption of Plaintiffs' and Class Members' PII, and to monitor user behavior and activity to identify possible threats.

**Answer: Denied.**

61.    Time is of the essence when PII is subject to unauthorized access and/or acquisition.

**Answer: Manpower lacks information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies the same.**

62.    The disclosed, accessed, and/or acquired PII of Plaintiffs and Class Members is, upon information and good faith belief, already available on the Dark Web.

**Answer: Denied.**

63.    Hackers can access and then offer for sale the unencrypted, unredacted PII to criminals.

**Answer: Manpower lacks information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies the same.**

16

37872933.1

64.     Plaintiffs and Class Members are now subject to the present and continuing risk of fraud, identity theft, and misuse resulting from the publication of their PII onto the Dark Web.

**Answer: Denied.**

65.     Plaintiffs and Class Members now face a lifetime risk of identity theft, which is heightened here by unauthorized access, disclosure, and/or activity by cybercriminals on computer systems containing sensitive personal information.

**Answer: Denied.**

66.     Despite the highly sensitive nature of the information that Defendant obtained, maintained, and stored and the prevalence of data breaches, Defendant inexplicably failed to take appropriate steps to safeguard the PII of Plaintiffs and Class Members from being compromised.

**Answer: Denied.**

67.     The Data Breach itself, and information Defendant has disclosed about the breach to date, including its length, the need to remediate Defendant's cybersecurity, and the sensitive nature of the impacted data collectively demonstrate Defendant failed to implement reasonable measures to prevent cyber-attacks and exposure of the PII it oversaw.

**Answer: Denied.**

**D.  Defendant Failed to Comply with FTC Guidelines.**

68.     The FTC recognizes that consumer data is a lucrative (and valuable) form of currency. In an FTC roundtable presentation, former Commissioner Pamela Jones Harbour underscored this point by reiterating that "most consumers cannot begin to comprehend the types and amount of information collected by businesses, or why their information may be commercially valuable. Data is currency."

37872933.1

**Answer: Manpower admits only that Plaintiffs are relying on certain alleged guidelines to make their allegations, and refers to said guidelines for their content and meaning. Manpower denies as untrue any allegations contained in this paragraph that are contrary to or inconsistent with the terms of said guidelines. In further answer, the allegations in this paragraph contain legal conclusions of the pleader to which no response is required. To the extent a response is required, Manpower denies the allegations contained in this paragraph.**

69.    The FTC has promulgated numerous guides for businesses that highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.

**Answer: Manpower admits only that Plaintiffs are relying on certain alleged guidelines to make their allegations, and refers to said guidelines for their content and meaning. Manpower denies as untrue any allegations contained in this paragraph that are contrary to or inconsistent with the terms of said guidelines. In further answer, the allegations in this paragraph contain legal conclusions of the pleader to which no response is required. To the extent a response is required, Manpower denies the allegations contained in this paragraph.**

70.    In 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established cyber-security guidelines for business.

**Answer: Manpower admits only that Plaintiffs are relying on certain alleged guidelines to make their allegations, and refers to said guidelines for their content and meaning. Manpower denies as untrue any allegations contained in this paragraph that are contrary to or inconsistent with the terms of said guidelines. In further answer, the allegations in this paragraph contain legal conclusions of the pleader to which no response is required. To the extent a response is required, Manpower denies the allegations contained in this paragraph.**

37872933.1

71.    Those guidelines note that businesses should protect the personal customer information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct any security problems.

**Answer: Manpower admits only that Plaintiffs are relying on certain alleged guidelines to make their allegations, and refers to said guidelines for their content and meaning. Manpower denies as untrue any allegations contained in this paragraph that are contrary to or inconsistent with the terms of said guidelines. In further answer, the allegations in this paragraph contain legal conclusions of the pleader to which no response is required. To the extent a response is required, Manpower denies the allegations contained in this paragraph.**

72.    The FTC further recommends that companies not maintain PII longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

**Answer: Manpower admits only that Plaintiffs are relying on certain alleged guidelines to make their allegations, and refers to said guidelines for their content and meaning. Manpower denies as untrue any allegations contained in this paragraph that are contrary to or inconsistent with the terms of said guidelines. In further answer, the allegations in this paragraph contain legal conclusions of the pleader to which no response is required. To the extent a response is required, Manpower denies the allegations contained in this paragraph.**

73.    The FTC has also issued, and regularly updates, guidelines for businesses to implement reasonable data security practices and incorporate security into all areas of the business.

19

**Answer: Manpower admits only that Plaintiffs are relying on certain alleged guidelines to make their allegations, and refers to said guidelines for their content and meaning. Manpower denies as untrue any allegations contained in this paragraph that are contrary to or inconsistent with the terms of said guidelines. In further answer, the allegations in this paragraph contain legal conclusions of the pleader to which no response is required. To the extent a response is required, Manpower denies the allegations contained in this paragraph.**

74.     According to the FTC, reasonable data security protocols require:

    a.  Encrypting the information stored on computer networks;

    b.  Retaining payment card information only as long as necessary;

    c.  Properly disposing of personal information that is no longer needed or can be disposed pursuant to relevant state and federal laws;

    d.  Limiting administrative access to business systems;

    e.  Using industry approved activity;

    f.  Monitoring activity on networks to uncover unapproved activity;

    g.  Verifying that privacy and security features function properly;

    h.  Testing for common vulnerabilities; and

    i.  Updating and patching third-party software.

**Answer: Manpower admits only that Plaintiffs are relying on certain alleged guidelines to make their allegations, and refers to said guidelines for their content and meaning. Manpower denies as untrue any allegations contained in this paragraph that are contrary to or inconsistent with the terms of said guidelines. In further answer, the allegations in this paragraph contain legal conclusions of the pleader to which no response is required. To the extent a response is required, Manpower denies the allegations contained in this paragraph.**

20

37872933.1

75.    The FTC cautions businesses that failure to protect PII and the resulting data breaches can destroy consumers' finances, credit history, and reputations, and can take time, money, and patience to resolve the effect.13 Indeed, the FTC treats the failure to implement reasonable and adequate data security measures-like Defendant failed to do here-as an unfair act prohibited by Section 5(a) of the FTC Act.

**Answer: Manpower admits only that Plaintiffs are relying on certain alleged guidelines to make their allegations, and refers to said guidelines for their content and meaning. Manpower denies as untrue any allegations contained in this paragraph that are contrary to or inconsistent with the terms of said guidelines. In further answer, the allegations in this paragraph contain legal conclusions of the pleader to which no response is required. To the extent a response is required, Manpower denies the allegations contained in this paragraph.**

76.    The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect consumer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act of practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA") 15 U.S.C. § 45.

**Answer: Manpower admits only that Plaintiffs are relying on certain alleged guidelines to make their allegations, and refers to said guidelines for their content and meaning. Manpower denies as untrue any allegations contained in this paragraph that are contrary to or inconsistent with the terms of said guidelines. In further answer, the allegations in this paragraph contain legal conclusions of the pleader to which no response is required. To the extent a response is required, Manpower denies the allegations contained in this paragraph.**

21

77.    Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

**Answer: Manpower admits only that Plaintiffs are relying on certain alleged guidelines to make their allegations, and refers to said guidelines for their content and meaning. Manpower denies as untrue any allegations contained in this paragraph that are contrary to or inconsistent with the terms of said guidelines. In further answer, the allegations in this paragraph contain legal conclusions of the pleader to which no response is required. To the extent a response is required, Manpower denies the allegations contained in this paragraph.**

78.    Defendant failed to properly implement basic data security practices.

**Answer: Denied.**

79.    Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to customer's PII constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

**Answer: Denied.**

80.    Defendant was at all times fully aware of the obligation to protect the PII of its clients. Defendant was also aware of the significant repercussions that would result from its failure to do so.

**Answer: The allegations in this paragraph contain legal conclusions of the pleader to which no response is required. To the extent a response is required, Manpower denies the allegations contained in this paragraph.**

37872933.1

E.  **Defendant Failed to Comply with Industry Standards.**

81.    As shown above, experts studying cybersecurity routinely identify large companies like Defendant as being particularly vulnerable to cyberattacks because of the value of the PII which it collects and maintains.

**Answer: Manpower lacks information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies the same. Manpower further admits only that Plaintiffs are relying on certain alleged guidelines to make their allegations, and refers to said guidelines for their content and meaning. Manpower denies as untrue any allegations contained in this paragraph that are contrary to or inconsistent with the terms of said guidelines.**

82.    Several best practices have been identified that at a minimum should be implemented by companies like Defendant, including but not limited to educating all employees; strong passwords; multi-layer security, including firewalls, anti-virus, and anti-malware software; encryption, making data unreadable without a key; multi-factor authentication; backup data; and limited which employees can access sensitive data.

**Answer: Manpower admits only that Plaintiffs are relying on certain alleged guidelines and standards to make their allegations, and refers to said guidelines and standards for their content and meaning. Manpower denies as untrue any allegations contained in this paragraph that are contrary to or inconsistent with the terms of said guidelines and standards. In further answer, the allegations in this paragraph contain legal conclusions of the pleader to which no response is required.  To the extent a response is required, Manpower denies the allegations contained in this paragraph.**

23

37872933.1

83.    The United States Government and the United States Cybersecurity & Infrastructure Agency recommend several similar and supplemental measures to prevent and detect cyberattacks, including, but not limited to: implement an awareness and training program, enabling strong spam filters, scanning incoming and outgoing emails, configuring firewalls, automating anti-virus and anti-malware programs, managing privileged accounts, configuring access controls, disabling remote desktop protocol, and updating and patching computers.

**Answer: Manpower admits only that Plaintiffs are relying on certain alleged guidelines and standards to make their allegations, and refers to said guidelines and standards for their content and meaning. Manpower denies as untrue any allegations contained in this paragraph that are contrary to or inconsistent with the terms of said guidelines and standards. In further answer, the allegations in this paragraph contain legal conclusions of the pleader to which no response is required.  To the extent a response is required, Manpower denies the allegations contained in this paragraph.**

84.    Other best cybersecurity practices include installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches, and routers; monitoring and protection of physical security systems; protection against any possible communication system; training staff regarding critical points.

**Answer: Manpower admits only that Plaintiffs are relying on certain alleged guidelines and standards to make their allegations, and refers to said guidelines and standards for their content and meaning. Manpower denies as untrue any allegations contained in this paragraph that are contrary to or inconsistent with the terms of said guidelines and standards. In further answer, the allegations in this paragraph contain legal conclusions of**

**the pleader to which no response is required.  To the extent a response is required, Manpower denies the allegations contained in this paragraph.**

85.     Defendant failed to meet the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework Version 1.1[14] (including without limitation PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center for Internet's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

**Answer: Manpower admits only that Plaintiffs are relying on certain alleged guidelines and standards to make their allegations, and refers to said guidelines and standards for their content and meaning. Manpower denies as untrue any allegations contained in this paragraph that are contrary to or inconsistent with the terms of said guidelines and standards. In further answer, the allegations in this paragraph contain legal conclusions of the pleader to which no response is required.  To the extent a response is required, Manpower denies the allegations contained in this paragraph.**

86.     The FBI's Internet Crime Complaint (IC3) 2019 estimated that there was more than $3.5 billion in losses to individual and business victims due to identity fraud in that year alone. That same report identified "rapid reporting" as a tool to help law enforcement stop fraudulent transactions and mitigate losses.

**Answer: Manpower lacks information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies the same. Manpower further admits only that Plaintiffs are relying on documents to make their allegations, and refers to said documents for their content and meaning. Manpower denies as untrue any**

37872933.1

**allegations contained in this paragraph that are contrary to or inconsistent with the terms of said documents.**

87.    The foregoing frameworks are existing and applicable industry standards, and Defendant failed to comply with these accepted standards, thereby opening the door to the cyber incident and causing the Data Breach.

**Answer: Manpower admits only that Plaintiffs are relying on certain alleged guidelines and standards to make their allegations, and refers to said guidelines and standards for their content and meaning. Manpower denies as untrue any allegations contained in this paragraph that are contrary to or inconsistent with the terms of said guidelines and standards. In further answer, the allegations in this paragraph contain legal conclusions of the pleader to which no response is required.  To the extent a response is required, Manpower denies the allegations contained in this paragraph.**

**F.   The Data Breach Resulted from Defendant's Failure to Properly Maintain and Safeguard Its Systems and Data.**

88.    Defendant breached its obligations to Plaintiffs and Class Members and/or was otherwise negligent and reckless because it failed to properly maintain and safeguard its computer systems and data.

**Answer: Denied.**

89.    Defendant's unlawful conduct includes, but is not limited to, the following acts and/or omissions:

    a.   Failing to maintain an adequate data security system to reduce the risk of data breaches and cyber-attacks;

    b.   Failing to adequately protect clients' PII;

    c.   Failing to properly monitor its own data security systems for existing

26

37872933.1

intrusions;

d.  Failing to ensure that its vendors with access to its computer systems employed reasonable security procedures;

e.  Failing to detect unauthorized ingress into its systems;

f.  Failing to implement and monitor reasonable network segmentation to detect unauthorized travel within its systems, including to and from areas containing the most sensitive data;

g.  Failing to detect unauthorized exfiltration of the most sensitive data on its systems;

h.  Failing to train its employees in the proper handling of emails containing PII and maintain adequate email security practices;

i.  Failing to comply with FTC guidelines for cybersecurity, in violation of Section 5 of the FTC Act; and

j.  Otherwise breaching their duties and obligations to protect Plaintiffs' and Class Members' PII.

**Answer: Denied.**

90.    Defendant negligently and unlawfully failed to safeguard Plaintiffs' and Class Members' PII. Accordingly, as outlined below, Plaintiffs and Class Members now face actual fraud and identity theft as well as increased risk of fraud and identity theft. In addition, Plaintiffs and Class Members lost the benefit of the bargain they made with Defendant.

**Answer: Denied.**

27

37872933.1

**G.  Cyberattacks and Data Breaches Cause Disruption and Put Victims at an Increased Risk of Fraud and Identity Theft.**

91.     Cyberattacks and data breaches at companies like Defendant's are especially problematic because they can negatively impact the overall daily lives of individuals affected by the attack.

**Answer: Manpower lacks information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies the same.**

92.     The United States Government Accountability Office released a report in 2007 regarding data breaches in which it noted that victims of identity theft will face "substantial costs and time to repair the damage to their good name and credit record."

**Answer: Manpower lacks information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies the same. Manpower further admits only that Plaintiffs are relying on documents to make their allegations, and refers to said documents for their content and meaning. Manpower denies as untrue any allegations contained in this paragraph that are contrary to or inconsistent with the terms of said documents.**

93.     That is because any victim of a data breach is exposed to serious ramifications regardless of the nature of the data. Indeed, the reason criminals steal personally identifiable information is to monetize it.

**Answer: Manpower lacks information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies the same.**

94.     They do this by selling the spoils of their cyberattacks on the black market to identify thieves who desire to extort and harass victims, take over victims' identities in order to engage in illegal financial transactions under the victims' names. Because a person's identity is

28

37872933.1

akin to a puzzle, the more accurate piece of data an identity thief obtains about a person, the easier it is for the thief to take on the victim's identity, or otherwise harass or track the victim.

**Answer: Manpower lacks information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies the same.**

95.     For example, armed with just a name and date of birth, a data thief can utilize a hacking technique called "social engineering" to obtain even more information about a victim's identity, such as a person's login credentials or Social Security Number. Social engineering is a form of hacking whereby a data thief uses previously acquired information to manipulate individuals into disclosing additional confidential or personal information through means such as spam phone calls and text messages or phishing emails.

**Answer: Manpower lacks information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies the same.**

96.     The FTC recommends that identity theft victims take several steps to protect their personal and financial information after a data breach, including contacting one of the credit bureaus to place a fraud alert (and consider an extended fraud alert that lasts for 7 years if someone steal their identity), reviewing their credit reports, contacting companies to remove fraudulent charges from their accounts, placing a credit freeze on their credit, and correcting their credit reports.

**Answer: Manpower lacks information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies the same.**

97.     Identity thieves use stolen personal information such as Social Security numbers for a variety of crimes, including credit card fraud, phone or utilities fraud, and bank/finance fraud.

37872933.1

**Answer: Manpower lacks information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies the same.**

98.    Identity thieves can also use Social Security numbers to obtain a driver's license or official identification card in the victim's name but with the thief's picture; use the victim's name and Social Security number to obtain government benefits; or file a fraudulent tax return using the victim's information.

**Answer: Manpower lacks information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies the same.**

99.    In addition, thieves may obtain a job using the victim's Social Security Number, rent a house or receive medical services in the victim's name, and may even give the victim's personal information to police during an arrest resulting in an issued victim's name.

**Answer: Manpower lacks information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies the same.**

100.    Moreover, theft of PII is also gravely serious because PII is an extremely valuable property right.

**Answer: Manpower lacks information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies the same.**

101.    Its value is axiomatic, considering the value of "big data" in corporate America and the fact that the consequences of cyber thefts include heavy prison sentences. Even this obvious risk to reward analysis illustrates beyond doubt that PII has considerable market value.

**Answer: Manpower lacks information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies the same.**

37872933.1

102.    There may additionally be a substantial time lag—measured in years—between when harm occurs and when it is discovered, and also between when PII and/or financial information is stolen and when it is used.

**Answer: Manpower lacks information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies the same.**

103.    According to the U.S. Government Accountability Office, which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.

**Answer: Manpower lacks information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies the same. Manpower further admits only that Plaintiffs are relying on documents to make their allegations, and refers to said documents for their content and meaning. Manpower denies as untrue any allegations contained in this paragraph that are contrary to or inconsistent with the terms of said documents.**

104.    PII is such a valuable commodity to identity thieves that once the information has been compromised, criminals often trade the information on the "cyber black- market" for years.

**Answer: Manpower lacks information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies the same.**

105.    There is a strong probability that entire batches of stolen information have been dumped on the black market and are yet to be dumped on the black market, meaning Plaintiffs and

37872933.1

Class Members are at an increased risk of fraud and identity theft for the remainder of their lifetimes.

**Answer: Manpower lacks information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies the same.**

106. Plaintiffs and Class Members must vigilantly monitor their financial and medical accounts for the remainder of their lifetimes.

**Answer: Denied.**

107. PII is particularly valuable because criminals can use it to target victims with various types of fraud and scams. Once PII is stolen, fraudulent use of the information and damage to victims may continue for years.

**Answer: Manpower lacks information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies the same.**

108. For example, the Social Security Administration has warned that identity thieves can use an individual's Social Security number to apply for additional credit lines. Such fraud may go undetected until debt collection calls commence months, or even years, later.

**Answer: Manpower lacks information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies the same.**

109. Stolen Social Security numbers also make it possible for thieves to file fraudulent tax returns, file for unemployment benefits, or apply for a job using a false identity.

**Answer: Manpower lacks information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies the same.**

110. Each of these fraudulent activities is difficult to detect.

**Answer: Manpower lacks information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies the same.**

111.     Moreover, "SSNs have been central to the American identity infrastructure for years, being used as a key identifier[.] . . . U.S. banking processes have also had SSNs baked into their identification process for years. In fact, SSNs have been the gold standard for identifying and verifying the credit history of prospective customers."

**Answer: Manpower lacks information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies the same. Manpower further admits only that Plaintiffs are relying on documents to make their allegations, and refers to said documents for their content and meaning. Manpower denies as untrue any allegations contained in this paragraph that are contrary to or inconsistent with the terms of said documents.**

112.     "Despite the risk of fraud associated with the theft of Social Security numbers, just five of the nation's largest 25 banks have stopped using the numbers to verify a customer's identity after the initial account setup[.]" Accordingly, since Social Security numbers are frequently used to verify an individual's identity after logging onto an account or attempting a transaction, "[h]aving access to your Social Security number may be enough to help a thief steal money from your bank account"

**Answer: Manpower lacks information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies the same. Manpower further admits only that Plaintiffs are relying on documents to make their allegations, and refers to said documents for their content and meaning. Manpower denies as untrue any**

33

**allegations contained in this paragraph that are contrary to or inconsistent with the terms of said documents.**

113.    One such example of criminals piecing together bits and pieces of compromised Private Information for profit is the development of "Fullz" packages.

**Answer: Manpower lacks information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies the same.**

114.    With "Fullz" packages, cyber-criminals can cross-reference two sources of Private Information to marry unregulated data available elsewhere to criminally stolen data with an astonishingly complete scope and degree of accuracy in order to assemble complete dossiers on individuals.

**Answer: Manpower lacks information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies the same.**

115.    The development of "Fullz" packages means here that the stolen Private Information from the Data Breach can easily be used to link and identify it to Plaintiff's and Class Members' phone numbers, email addresses, and other unregulated sources and identifiers. In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the Private Information that was exfiltrated in the Data Breach, criminals may still easily create a "Fullz" package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over.

**Answer: Manpower lacks information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies the same.**

37872933.1

116.    The existence and prevalence of "Fullz" packages means that the Private Information stolen from the data breach can easily be linked to the unregulated data (like contact information) of Plaintiffs and the other Class Members.

**Answer: Manpower lacks information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies the same.**

117.    Thus, even if certain information (such as contact information) was not stolen in the data breach, criminals can still easily create a comprehensive "Fullz" package.

**Answer: Manpower lacks information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies the same.**

118.    Then, this comprehensive dossier can be sold—and then resold in perpetuity—to crooked operators and other criminals (like illegal and scam telemarketers).

**Answer: Manpower lacks information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies the same.**

119.    An individual may not know that their Social Security number was used to file for unemployment benefits until law enforcement notifies the individual's employer of the suspected fraud.

**Answer: Manpower lacks information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies the same.**

120.    Fraudulent tax returns are typically discovered only when an individual's authentic tax return is rejected.

**Answer: Manpower lacks information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies the same.**

121.    Moreover, it is not an easy task to change or cancel a stolen Social Security number.

**Answer: Manpower lacks information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies the same.**

122.    An individual cannot obtain a new Social Security number without significant paperwork and evidence of actual misuse.

**Answer: Manpower lacks information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies the same.**

123.    Even then, a new Social Security number may not be effective, as "[t]he credit bureaus and banks are able to link the new number very quickly to the old number, so all of that old bad information is quickly inherited into the new Social Security number."

**Answer: Manpower lacks information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies the same.**

124.    This data, as one would expect, demands a much higher price on the black market. Martin Walter, senior director at the cybersecurity firm RedSeal, explained, "[c]ompared to credit card information, personally identifiable information and Social Security numbers are worth more than 10x on the black market."

**Answer: Manpower lacks information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies the same. Manpower further admits only that Plaintiffs are relying on documents to make their allegations, and refers to said documents for their content and meaning. Manpower denies as untrue any allegations contained in this paragraph that are contrary to or inconsistent with the terms of said documents.**

125.    For this reason, Defendant knew or should have known about these dangers and strengthened its data systems and data security measures accordingly. Defendant was put on notice

36

of the substantial and foreseeable risk of harm from a data breach, yet it failed to properly prepare for that risk.

**Answer: Denied.**

## H.  Plaintiffs' and Class Members' Damages.

126.    Plaintiffs and Class Members have been damaged by the compromise of their PII in the Data Breach.

**Answer: Denied.**

127.    Plaintiffs' and Class Members' PII was compromised in the Data Breach and is now in the hands of cybercriminals who accessed the data Defendant held required and maintained. The PII exposed included names, addresses, passport scans, IDs, Social Security Numbers, financial account information, employees' worksites and hours worked, customer lists, test results, and other private information belonging to Defendant's current and former clients, job applicants, and employees.

**Answer: Denied.**

128.    As a direct and proximate result of Defendant's conduct, Plaintiffs and Class Members have been placed at a present, imminent, immediate, and continuing increased risk of harm from fraud and identity theft.

**Answer: Denied.**

129.    As a direct and proximate result of Defendant's conduct, Plaintiffs and Class Members have been forced to expend time dealing with the effects of the Data Breach, valuable time Plaintiffs and Class Members otherwise would have spent on other activities, including but not limited to work and/or recreation.

**Answer: Denied.**

37872933.1

130.    Plaintiffs and Class Members face substantial risk of out-of-pocket fraud losses such as loans opened in their names, medical services billed in their names, tax return fraud, utility bills opened in their names, credit card fraud, and similar identity theft. This risk is particularly acute for minor children whose pristine credit histories and unused Social Security numbers make them prime targets for synthetic identity theft that may go undetected for years or even decades.

**Answer: Denied.**

131.    Plaintiffs and Class Members face substantial risk of being targeted for future phishing, data intrusion, and other illegal schemes based on their PII as potential fraudsters could use that information to more effectively target such schemes to Plaintiffs and Class Members.

**Answer: Denied.**

132.    Plaintiffs and Class Members may also incur out-of-pocket costs for protective measures such as credit monitoring fees, credit report fees, credit freeze fees, and similar costs directly or indirectly related to the Data Breach.

**Answer: Denied.**

133.    Plaintiffs and Class Members also suffered a loss of value of their PII when it was acquired by cyber thieves in the Data Breach. Numerous courts have recognized the propriety of loss of value damages in related cases.

**Answer: Denied.**

134.    Plaintiffs and Class Members were also damaged via benefit-of-the-bargain damages. Plaintiffs and Class Members who are current or former clients of Defendant's, or who otherwise submitted their data to Defendant, overpaid for a service that was intended to be accompanied by adequate data security that complied with industry standards.

**Answer: Denied.**

37872933.1

135.    Part of the price Plaintiffs and Class Members paid to Defendant was intended to be used by Defendant to fund adequate data security practices to safeguard Plaintiffs' and Class Members' PII.

**Answer: Denied.**

136.    As demonstrated by the Data Breach, Defendant failed to fund and provide adequate data security practices. Thus, Plaintiffs and the Class Members who are current or former clients of Defendant did not get what they paid for and agreed to.

**Answer: Denied.**

137.    Plaintiffs and Class Members have suffered or will suffer actual injury as a direct result of the Data Breach. Many victims suffered ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably spent to remedy or mitigate the effects of the Data Breach relating to:

    a. Reviewing and monitoring sensitive accounts and finding fraudulent insurance claims, loans, and/or government benefits claims;

    b. Purchasing credit monitoring and identity theft prevention;

    c. Placing "freezes" and "alerts" with reporting agencies;

    d. Spending time on the phone with or at financial institutions, healthcare providers, and/or government agencies to dispute unauthorized and fraudulent activity in their name;

    e. Contacting financial institutions and closing or modifying financial accounts; and,

    f. Closely reviewing and monitoring their medical insurance accounts, bank accounts, and credit reports, as well as alerts for identity fraud including

39

37872933.1

their SSNs, for unauthorized activity for the remainder of their lifetimes.

**Answer: Denied.**

138.    Moreover, Plaintiffs and Class Members have an interest in ensuring that their PII, which is believed to remain in the possession of Defendant, is protected from further breaches by the implementation of security measures and safeguards, including but not limited to, making sure that the storage of data or documents containing PII is not accessible online or otherwise to unauthorized third parties.

**Answer: Manpower lacks information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies the same.**

139.    Further, as a result of Defendant's conduct, Plaintiffs and Class Members are forced to live with the anxiety that their PII—which contains the most intimate details about a person's life–may be disclosed to the entire world, thereby subjecting them to embarrassment and depriving them of any right to privacy whatsoever.

**Answer: Denied.**

140.    As a direct and proximate result of Defendant's actions and omissions, Plaintiffs and Class Members have suffered anxiety, emotional distress, and loss of privacy, and are at an increased risk of future harm.

**Answer: Denied.**

<strong>REPRESENTATIVE PLAINTIFFS' EXPERIENCES</strong>

*Mary Brooks*

141.    **Answer: On March 19, 2026, Plaintiff Mary Brooks was dismissed per the Court's Order and therefore no answer is required (ECF No. 25). To the extent an answer is required, the allegations are denied.**

40

142.    **Answer: On March 19, 2026, Plaintiff Mary Brooks was dismissed per the Court's Order and therefore no answer is required (ECF No. 25). To the extent an answer is required, the allegations are denied.**

143.    **Answer: On March 19, 2026, Plaintiff Mary Brooks was dismissed per the Court's Order and therefore no answer is required (ECF No. 25). To the extent an answer is required, the allegations are denied.**

144.    **Answer: On March 19, 2026, Plaintiff Mary Brooks was dismissed per the Court's Order and therefore no answer is required (ECF No. 25). To the extent an answer is required, the allegations are denied.**

145.    **Answer: On March 19, 2026, Plaintiff Mary Brooks was dismissed per the Court's Order and therefore no answer is required (ECF No. 25). To the extent an answer is required, the allegations are denied.**

146.    **Answer: On March 19, 2026, Plaintiff Mary Brooks was dismissed per the Court's Order and therefore no answer is required (ECF No. 25). To the extent an answer is required, the allegations are denied.**

147.    **Answer: On March 19, 2026, Plaintiff Mary Brooks was dismissed per the Court's Order and therefore no answer is required (ECF No. 25). To the extent an answer is required, the allegations are denied.**

148.    **Answer: On March 19, 2026, Plaintiff Mary Brooks was dismissed per the Court's Order and therefore no answer is required (ECF No. 25). To the extent an answer is required, the allegations are denied.**

37872933.1

149.    **Answer: On March 19, 2026, Plaintiff Mary Brooks was dismissed per the Court's Order and therefore no answer is required (ECF No. 25). To the extent an answer is required, the allegations are denied.**

150.    **Answer: On March 19, 2026, Plaintiff Mary Brooks was dismissed per the Court's Order and therefore no answer is required (ECF No. 25). To the extent an answer is required, the allegations are denied.**

151.    **Answer: On March 19, 2026, Plaintiff Mary Brooks was dismissed per the Court's Order and therefore no answer is required (ECF No. 25). To the extent an answer is required, the allegations are denied.**

152.    **Answer: On March 19, 2026, Plaintiff Mary Brooks was dismissed per the Court's Order and therefore no answer is required (ECF No. 25). To the extent an answer is required, the allegations are denied.**

153.    **Answer: On March 19, 2026, Plaintiff Mary Brooks was dismissed per the Court's Order and therefore no answer is required (ECF No. 25). To the extent an answer is required, the allegations are denied.**

*Sara Conrad*

154.    Plaintiff Sara Conrad is a former employee of Manpower, who was required to provide extensive private information as a condition of employment.

**Answer: Manpower admits only that Sara Conrad was a former employee of Manpower and that Manpower receives and stores information in the course of its business. Manpower denies the remaining allegations contained in this paragraph.**

155.    Plaintiff Conrad provided her PII with the reasonable expectation that Defendant would protect and secure this information from unauthorized access and disclosure, particularly

42

given that Defendant was legally obligated to safeguard applicant and employee records under federal and state employment laws.

**Answer: Manpower lacks information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies the same.**

156. According to the notice Plaintiff Conrad received from Manpower dated August 11, 2025, her PII was compromised in the Data Breach.

**Answer: Manpower admits only that Plaintiffs are relying on certain documents, but refers to the contents of those documents for their content and meaning. Manpower denies as untrue any allegations contained in this paragraph that are contrary to or inconsistent with the terms of those documents.**

157. Plaintiff Conrad reasonably expected and understood that Defendant would implement, at a minimum, industry standard precautions to protect, maintain, and safeguard her PII from unauthorized users or disclosure, and would timely notify her of any data security incidents.

**Answer: Manpower lacks information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies the same.**

158. Plaintiff Conrad is very careful about sharing her sensitive PII. She has never knowingly transmitted unencrypted sensitive PII over the internet or any other unsecured source. Furthermore, Plaintiff Conrad stores any documents containing sensitive information in a safe and secure location or destroys the documents.

**Answer: Manpower lacks information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies the same.**

37872933.1

159.    As a result of the Data Breach, Plaintiff Conrad has made reasonable efforts to mitigate the impact, including researching the Data Breach, reviewing financial statements, monitoring credit information, and remaining vigilant for signs of identity theft.

**Answer: Manpower lacks information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies the same.**

160.    Plaintiff Conrad has spent significant time responding to the Data Breach and will continue to spend valuable time she otherwise would have spent on other activities, including but not limited to work and/or recreation.

**Answer: Manpower lacks information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies the same.**

161.    Plaintiff Conrad suffered actual injury from having her sensitive information exposed and stolen in the Data Breach including, but not limited to: (a) damages to and diminution in the value of them PII; (b) loss of privacy; (c) continuous imminent and impending injury arising from the increased risk of financial and identity fraud and theft; (d) lost time and expenses to engage in mitigation efforts; and (e) dealing with increasing spam calls, texts, and emails.

**Answer: Denied.**

162.    Due to the Data Breach and the significant delay in notification, Plaintiff Conrad anticipates spending considerable additional time and money on an ongoing basis to try to mitigate and address the harms caused by the Data Breach.

**Answer: Manpower lacks information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies the same.**

163.    Since the Data Breach, Plaintiff Conrad is particularly concerned about the exposure of her Social Security number to criminal actors, as this number will always be tied to her

44

identity and can be used to commit various types of fraud and identity theft for the remainder of her lifetime.

**Answer: Manpower lacks information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies the same.**

164.    As a result of the Data Breach, Plaintiff Conrad has experienced increased anxiety, stress, and fear knowing that her PII is in the hands of ransomware criminals who have demonstrated their willingness to exploit such data for financial gain.

**Answer: Denied.**

165.    Plaintiff Conrad has a continuing interest in ensuring that her PII, which remains in Defendant's possession, is protected and safeguarded from future breaches.

**Answer: Denied.**

*Christine Cooper*

166.    Plaintiff Christine Cooper utilized Defendant's staffing services in connection with seeking employment, at which time she was required to provide extensive private information as a condition of receiving placement services.

**Answer: Manpower admits only that Christine Cooper was a former employee of Manpower and that Manpower receives and stores information in the course of its business. Manpower denies the remaining allegations contained in this paragraph.**

167.    Plaintiff Christine Cooper provided her PII with the reasonable expectation that Defendant would protect and secure this information from unauthorized access and disclosure, particularly given that Defendant was legally obligated to safeguard applicant and employee records under federal and state employment laws.

37872933.1

**Answer: Manpower lacks information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies the same.**

168.    According to the notice Plaintiff Christine Cooper received from Manpower dated August 11, 2025, her PII was compromised in the Data Breach.

**Answer: Manpower admits only that Plaintiffs are relying on certain documents, but refers to the contents of those documents for their content and meaning. Manpower denies as untrue any allegations contained in this paragraph that are contrary to or inconsistent with the terms of those documents.**

169.    Plaintiff Christine Cooper reasonably expected and understood that Defendant would implement, at a minimum, industry standard precautions to protect, maintain, and safeguard her PII from unauthorized users or disclosure, and would timely notify her of any data security incidents.

**Answer: Manpower lacks information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies the same.**

170.    Plaintiff Christine Cooper is very careful about sharing her sensitive PII. She has never knowingly transmitted unencrypted sensitive PII over the internet or any other unsecured source. Furthermore, Plaintiff Christine Cooper stores any documents containing sensitive information in a safe and secure location or destroys the documents.

**Answer: Manpower lacks information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies the same.**

171.    As a result of the Data Breach, Plaintiff Christine Cooper has made reasonable efforts to mitigate the impact, including researching the Data Breach, reviewing financial statements, monitoring credit information, and remaining vigilant for signs of identity theft.

37872933.1

**Answer: Manpower lacks information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies the same.**

172.    Plaintiff Christine Cooper has spent significant time responding to the Data Breach and will continue to spend valuable time she otherwise would have spent on other activities, including but not limited to work and/or recreation.

**Answer: Manpower lacks information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies the same.**

173.    Plaintiff Christine Cooper suffered actual injury from having her sensitive information exposed and stolen in the Data Breach including, but not limited to: (a) damages to and diminution in the value of them PII; (b) loss of privacy; (c) continuous imminent and impending injury arising from the increased risk of financial and identity fraud and theft; (d) lost time and expenses to engage in mitigation efforts; and (e) dealing with increasing spam calls, texts, and emails.

**Answer: Denied.**

174.    Due to the Data Breach and the significant delay in notification, Plaintiff Christine Cooper anticipates spending considerable additional time and money on an ongoing basis to try to mitigate and address the harms caused by the Data Breach.

**Answer: Manpower lacks information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies the same.**

175.    Since the Data Breach, Plaintiff Christine Cooper is particularly concerned about the exposure of her Social Security number to criminal actors, as this number will always be tied to her identity and can be used to commit various types of fraud and identity theft for the remainder of her lifetime.

37872933.1

**Answer: Manpower lacks information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies the same.**

176.    As a result of the Data Breach, Plaintiff Christine Cooper has experienced increased anxiety, stress, and fear knowing that her PII is in the hands of ransomware criminals who have demonstrated their willingness to exploit such data for financial gain.

**Answer: Denied.**

177.    Plaintiff Christine Cooper has a continuing interest in ensuring that her PII, which remains in Defendant's possession, is protected and safeguarded from future breaches.

**Answer: Denied.**

*Fredrick Cooper*

178.    Plaintiff Fredrick Cooper utilized Defendant's staffing services in connection with seeking employment, at which time he was required to provide extensive private information as a condition of receiving placement services.

**Answer: Manpower admits only that Fredrick Cooper was a former employee of Manpower and that Manpower receives and stores information in the course of its business. Manpower denies the remaining allegations contained in this paragraph.**

179.    Plaintiff Fredrick Cooper provided his PII with the reasonable expectation that Defendant would protect and secure this information from unauthorized access and disclosure, particularly given that Defendant was legally obligated to safeguard applicant and employee records under federal and state employment laws.

**Answer: Manpower lacks information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies the same.**

37872933.1

180.    According to the notice Plaintiff Fredrick Cooper received from Manpower dated August 11, 2025, his PII was compromised in the Data Breach.

**Answer: Manpower admits only that Plaintiffs are relying on certain documents, but refers to the contents of those documents for their content and meaning. Manpower denies as untrue any allegations contained in this paragraph that are contrary to or inconsistent with the terms of those documents.**

181.    Plaintiff Fredrick Cooper reasonably expected and understood that Defendant would implement, at a minimum, industry standard precautions to protect, maintain, and safeguard his PII from unauthorized users or disclosure, and would timely notify his of any data security incidents.

**Answer: Manpower lacks information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies the same.**

182.    Plaintiff Fredrick Cooper is very careful about sharing his sensitive PII. He has never knowingly transmitted unencrypted sensitive PII over the internet or any other unsecured source. Furthermore, Plaintiff Fredrick Cooper stores any documents containing sensitive information in a safe and secure location or destroys the documents.

**Answer: Manpower lacks information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies the same.**

183.    As a result of the Data Breach, Plaintiff Fredrick Cooper has made reasonable efforts to mitigate the impact, including researching the Data Breach, reviewing financial statements, monitoring credit information, and remaining vigilant for signs of identity theft. Following receipt of the Notice, Plaintiff Fredrick Cooper received notices that his Private Information was on the dark web. He pulled his credit report and saw several credit inquiries from

49

37872933.1

businesses that were unknown to him. Plaintiff Fredrick Cooper has taken steps to research and remove any such inquiries from his credit report.

**Answer: Manpower lacks information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies the same.**

184.    Plaintiff Fredrick Cooper has spent significant time responding to the Data Breach and will continue to spend valuable time he otherwise would have spent on other activities, including but not limited to work and/or recreation.

**Answer: Manpower lacks information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies the same.**

185.    Plaintiff Fredrick Cooper suffered actual injury from having his sensitive information exposed and stolen in the Data Breach including, but not limited to: (a) damages to and diminution in the value of them PII; (b) loss of privacy; (c) continuous imminent and impending injury arising from the increased risk of financial and identity fraud and theft; (d) lost time and expenses to engage in mitigation efforts; and (e) dealing with increasing spam calls, texts, and emails.

**Answer: Denied.**

186.    Plaintiff Fredrick Cooper also experienced fraudulent charges on his checking account, the same account utilized for his paycheck deposits from Defendant. He had to get a new account number and debit card after an unauthorized actor charged approximately $30 to his account. He also noticed an increase in calls and emails regarding loan inquiries, although Plaintiff Fredrick Cooper had not been applying for any loans. Plaintiff traces these issues to Defendant's Data Breach, given the exposure of his Social Security Number and banking information—both of which were in Defendant's possession at the time of the Data Breach, and timing of the incidents.

37872933.1

Plaintiff Fredrick Cooper has concerns that these issues will continue to happen, given the exposure of his Private Information.

**Answer: Manpower lacks information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies the same.**

187.    Due to the Data Breach and the significant delay in notification, Plaintiff Fredrick Cooper anticipates spending considerable additional time and money on an ongoing basis to try to mitigate and address the harms caused by the Data Breach.

**Answer: Manpower lacks information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies the same.**

188.    Since the Data Breach, Plaintiff Fredrick Cooper is particularly concerned about the exposure of his Social Security number to criminal actors, as this number will always be tied to his identity and can be used to commit various types of fraud and identity theft for the remainder of his lifetime.

**Answer: Manpower lacks information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies the same.**

189.    As a result of the Data Breach, Plaintiff Fredrick Cooper has experienced increased anxiety, stress, and fear knowing that his PII is in the hands of ransomware criminals who have demonstrated their willingness to exploit such data for financial gain.

**Answer: Denied.**

190.    Plaintiff Fredrick Cooper has a continuing interest in ensuring that his PII, which remains in Defendant's possession, is protected and safeguarded from future breaches.

**Answer: Denied.**

51

37872933.1

*Amy Doublin*

191.   **Answer: On March 19, 2026, Plaintiff Amy Doublin was dismissed per the Court's Order and therefore no answer is required (ECF No. 25). To the extent an answer is required, the allegations are denied.**

192.   **Answer: On March 19, 2026, Plaintiff Amy Doublin was dismissed per the Court's Order and therefore no answer is required (ECF No. 25). To the extent an answer is required, the allegations are denied.**

193.   **Answer: On March 19, 2026, Plaintiff Amy Doublin was dismissed per the Court's Order and therefore no answer is required (ECF No. 25). To the extent an answer is required, the allegations are denied.**

194.   **Answer: On March 19, 2026, Plaintiff Amy Doublin was dismissed per the Court's Order and therefore no answer is required (ECF No. 25). To the extent an answer is required, the allegations are denied.**

195.   **Answer: On March 19, 2026, Plaintiff Amy Doublin was dismissed per the Court's Order and therefore no answer is required (ECF No. 25). To the extent an answer is required, the allegations are denied.**

196.   **Answer: On March 19, 2026, Plaintiff Amy Doublin was dismissed per the Court's Order and therefore no answer is required (ECF No. 25). To the extent an answer is required, the allegations are denied.**

197.   **Answer: On March 19, 2026, Plaintiff Amy Doublin was dismissed per the Court's Order and therefore no answer is required (ECF No. 25). To the extent an answer is required, the allegations are denied.**

37872933.1

198.    **Answer: On March 19, 2026, Plaintiff Amy Doublin was dismissed per the Court's Order and therefore no answer is required (ECF No. 25). To the extent an answer is required, the allegations are denied.**

199.    **Answer: On March 19, 2026, Plaintiff Amy Doublin was dismissed per the Court's Order and therefore no answer is required (ECF No. 25). To the extent an answer is required, the allegations are denied.**

200.    **Answer: On March 19, 2026, Plaintiff Amy Doublin was dismissed per the Court's Order and therefore no answer is required (ECF No. 25). To the extent an answer is required, the allegations are denied.**

201.    **Answer: On March 19, 2026, Plaintiff Amy Doublin was dismissed per the Court's Order and therefore no answer is required (ECF No. 25). To the extent an answer is required, the allegations are denied.**

202.    **Answer: On March 19, 2026, Plaintiff Amy Doublin was dismissed per the Court's Order and therefore no answer is required (ECF No. 25). To the extent an answer is required, the allegations are denied.**

*Deanna Ghinelli*

203.    Plaintiff Deanna Ghinelli utilized Defendant's staffing services in connection with seeking employment, at which time she was required to provide extensive private information as a condition of receiving placement services.

**Answer: Manpower admits only that Deanna Ghinelli was a former employee of Manpower and that Manpower receives and stores information in the course of its business. Manpower denies the remaining allegations contained in this paragraph.**

53

204.    Plaintiff Ghinelli provided her PII with the reasonable expectation that Defendant would protect and secure this information from unauthorized access and disclosure, particularly given that Defendant was legally obligated to safeguard applicant and employee records under federal and state employment laws.

**Answer: Manpower lacks information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies the same.**

205.    According to the notice Plaintiff Ghinelli received from Manpower dated August 11, 2025, her PII was compromised in the Data Breach.

**Answer: Manpower admits only that Plaintiffs are relying on certain documents, but refers to the contents of those documents for their content and meaning. Manpower denies as untrue any allegations contained in this paragraph that are contrary to or inconsistent with the terms of those documents.**

206.    Plaintiff Ghinelli reasonably expected and understood that Defendant would implement, at a minimum, industry standard precautions to protect, maintain, and safeguard her PII from unauthorized users or disclosure, and would timely notify her of any data security incidents.

**Answer: Manpower lacks information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies the same.**

207.    Plaintiff Ghinelli is very careful about sharing her sensitive PII. She has never knowingly transmitted unencrypted sensitive PII over the internet or any other unsecured source. Furthermore, Plaintiff Ghinelli stores any documents containing sensitive information in a safe and secure location or destroys the documents.

**Answer: Manpower lacks information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies the same.**

54

208.    As a result of the Data Breach, Plaintiff Ghinelli has made reasonable efforts to mitigate the impact, including researching the Data Breach, reviewing financial statements, monitoring credit information, and remaining vigilant for signs of identity theft.

**Answer: Manpower lacks information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies the same.**

209.    Plaintiff Ghinelli has spent significant time responding to the Data Breach and will continue to spend valuable time she otherwise would have spent on other activities, including but not limited to work and/or recreation.

**Answer: Manpower lacks information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies the same.**

210.    Plaintiff Ghinelli suffered actual injury from having her sensitive information exposed and stolen in the Data Breach including, but not limited to: (a) damages to and diminution in the value of them PII; (b) loss of privacy; (c) continuous imminent and impending injury arising from the increased risk of financial and identity fraud and theft; (d) lost time and expenses to engage in mitigation efforts; and (e) dealing with increasing spam calls, texts, and emails.

**Answer: Denied.**

211.    Due to the Data Breach and the significant delay in notification, Plaintiff Ghinelli anticipates spending considerable additional time and money on an ongoing basis to try to mitigate and address the harms caused by the Data Breach.

**Answer: Manpower lacks information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies the same.**

212.    Since the Data Breach, Plaintiff Ghinelli is particularly concerned about the exposure of her Social Security number to criminal actors, as this number will always be tied to her

37872933.1

identity and can be used to commit various types of fraud and identity theft for the remainder of her lifetime.

**Answer: Manpower lacks information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies the same.**

213.    As a result of the Data Breach, Plaintiff Ghinelli has experienced increased anxiety, stress, and fear knowing that her PII is in the hands of ransomware criminals who have demonstrated their willingness to exploit such data for financial gain.

**Answer: Denied.**

214.    Plaintiff Ghinelli has a continuing interest in ensuring that her PII, which remains in Defendant's possession, is protected and safeguarded from future breaches.

**Answer: Denied.**

*Shanna Harmon*

215.    **Answer: On March 19, 2026, Plaintiff Shanna Harmon was dismissed per the Court's Order and therefore no answer is required (ECF No. 25). To the extent an answer is required, the allegations are denied.**

216.    **Answer: On March 19, 2026, Plaintiff Shanna Harmon was dismissed per the Court's Order and therefore no answer is required (ECF No. 25). To the extent an answer is required, the allegations are denied.**

217.    **Answer: On March 19, 2026, Plaintiff Shanna Harmon was dismissed per the Court's Order and therefore no answer is required (ECF No. 25). To the extent an answer is required, the allegations are denied.**

37872933.1

218.     **Answer: On March 19, 2026, Plaintiff Shanna Harmon was dismissed per the Court's Order and therefore no answer is required (ECF No. 25). To the extent an answer is required, the allegations are denied.**

219.     **Answer: On March 19, 2026, Plaintiff Shanna Harmon was dismissed per the Court's Order and therefore no answer is required (ECF No. 25). To the extent an answer is required, the allegations are denied.**

220.     **Answer: On March 19, 2026, Plaintiff Shanna Harmon was dismissed per the Court's Order and therefore no answer is required (ECF No. 25). To the extent an answer is required, the allegations are denied.**

221.     **Answer: On March 19, 2026, Plaintiff Shanna Harmon was dismissed per the Court's Order and therefore no answer is required (ECF No. 25). To the extent an answer is required, the allegations are denied.**

222.     **Answer: On March 19, 2026, Plaintiff Shanna Harmon was dismissed per the Court's Order and therefore no answer is required (ECF No. 25). To the extent an answer is required, the allegations are denied.**

223.     **Answer: On March 19, 2026, Plaintiff Shanna Harmon was dismissed per the Court's Order and therefore no answer is required (ECF No. 25). To the extent an answer is required, the allegations are denied.**

224.     **Answer: On March 19, 2026, Plaintiff Shanna Harmon was dismissed per the Court's Order and therefore no answer is required (ECF No. 25). To the extent an answer is required, the allegations are denied.**

37872933.1

225.    **Answer: On March 19, 2026, Plaintiff Shanna Harmon was dismissed per the Court's Order and therefore no answer is required (ECF No. 25). To the extent an answer is required, the allegations are denied.**

226.    **Answer: On March 19, 2026, Plaintiff Shanna Harmon was dismissed per the Court's Order and therefore no answer is required (ECF No. 25). To the extent an answer is required, the allegations are denied.**

*Courtney Howard*

227.    Plaintiff Courtney Howard utilized Defendant's staffing services in connection with seeking employment, at which time she was required to provide extensive private information as a condition of receiving placement services.

**Answer: Manpower admits only that Courtney Howard was a former employee of Manpower and that Manpower receives and stores information in the course of its business. Manpower denies the remaining balance of the allegations contained in this paragraph.**

228.    Plaintiff Howard provided her PII with the reasonable expectation that Defendant would protect and secure this information from unauthorized access and disclosure, particularly given that Defendant was legally obligated to safeguard applicant and employee records under federal and state employment laws

**Answer: Manpower lacks information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies the same.**

229.    According to the notice Plaintiff Howard received from Manpower dated August 11, 2025, her PII was compromised in the Data Breach.

**Answer: Manpower admits only that Plaintiffs are relying on certain documents, but refers to the contents of those documents for their content and meaning. Manpower denies as**

37872933.1

**untrue any allegations contained in this paragraph that are contrary to or inconsistent with the terms of those documents.**

230.    Plaintiff Howard reasonably expected and understood that Defendant would implement, at a minimum, industry standard precautions to protect, maintain, and safeguard her PII from unauthorized users or disclosure, and would timely notify her of any data security incidents.

**Answer: Manpower lacks information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies the same.**

231.    Plaintiff Howard is very careful about sharing her sensitive PII. She has never knowingly transmitted unencrypted sensitive PII over the internet or any other unsecured source. Furthermore, Plaintiff Howard stores any documents containing sensitive information in a safe and secure location or destroys the documents.

**Answer: Manpower lacks information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies the same.**

232.    As a result of the Data Breach, Plaintiff Howard has made reasonable efforts to mitigate the impact, including researching the Data Breach, reviewing financial statements, monitoring credit information, and remaining vigilant for signs of identity theft.

**Answer: Manpower lacks information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies the same.**

233.    Plaintiff Howard has spent significant time responding to the Data Breach and will continue to spend valuable time she otherwise would have spent on other activities, including but not limited to work and/or recreation.

**Answer: Manpower lacks information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies the same.**

37872933.1

234.    Plaintiff Howard suffered actual injury from having her sensitive information exposed and stolen in the Data Breach including, but not limited to: (a) damages to and diminution in the value of them PII; (b) loss of privacy; (c) continuous imminent and impending injury arising from the increased risk of financial and identity fraud and theft; (d) lost time and expenses to engage in mitigation efforts; and (e) dealing with increasing spam calls, texts, and emails.

**Answer: Denied.**

235.    Due to the Data Breach and the significant delay in notification, Plaintiff Howard anticipates spending considerable additional time and money on an ongoing basis to try to mitigate and address the harms caused by the Data Breach.

**Answer: Manpower lacks information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies the same.**

236.    Since the Data Breach, Plaintiff Howard is particularly concerned about the exposure of her Social Security number to criminal actors, as this number will always be tied to her identity and can be used to commit various types of fraud and identity theft for the remainder of her lifetime.

**Answer: Manpower lacks information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies the same.**

237.    As a result of the Data Breach, Plaintiff Howard has experienced increased anxiety, stress, and fear knowing that her PII is in the hands of ransomware criminals who have demonstrated their willingness to exploit such data for financial gain.

**Answer: Denied.**

238.    Plaintiff Howard has a continuing interest in ensuring that her PII, which remains in Defendant's possession, is protected and safeguarded from future breaches.

37872933.1

**Answer: Denied.**

*Lorna Lane*

239.    Plaintiff Lorna Lane utilized Defendant's staffing services in connection with seeking employment, at which time she was required to provide extensive private information as a condition of receiving placement services.

**Answer: Manpower admits only that Lorna Lane was a former employee of Manpower and that Manpower receives and stores information in the course of its business. Manpower denies the remaining allegations contained in this paragraph.**

240.    Plaintiff Lane provided her PII with the reasonable expectation that Defendant would protect and secure this information from unauthorized access and disclosure, particularly given that Defendant was legally obligated to safeguard applicant and employee records under federal and state employment laws.

**Answer: Manpower lacks information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies the same.**

241.    According to the notice Plaintiff Lane received from Manpower dated August 11, 2025, her PII was compromised in the Data Breach.

**Answer: Manpower admits only that Plaintiffs are relying on certain documents, but refers to the contents of those documents for their content and meaning. Manpower denies as untrue any allegations contained in this paragraph that are contrary to or inconsistent with the terms of those documents.**

242.    Plaintiff Lane reasonably expected and understood that Defendant would implement, at a minimum, industry standard precautions to protect, maintain, and safeguard her PII from unauthorized users or disclosure, and would timely notify her of any data security incidents.

61

**Answer: Manpower lacks information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies the same.**

243.   Plaintiff Lane is very careful about sharing her sensitive PII. She has never knowingly transmitted unencrypted sensitive PII over the internet or any other unsecured source. Furthermore, Plaintiff Lane stores any documents containing sensitive information in a safe and secure location or destroys the documents.

**Answer: Manpower lacks information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies the same.**

244.   As a result of the Data Breach, Plaintiff Lane has made reasonable efforts to mitigate the impact, including researching the Data Breach, reviewing financial statements, monitoring credit information, and remaining vigilant for signs of identity theft.

**Answer: Manpower lacks information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies the same.**

245.   Plaintiff Lane has spent significant time responding to the Data Breach and will continue to spend valuable time she otherwise would have spent on other activities, including but not limited to work and/or recreation.

**Answer: Manpower lacks information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies the same.**

246.   Plaintiff Lane suffered actual injury from having her sensitive information exposed and stolen in the Data Breach including, but not limited to: (a) damages to and diminution in the value of them PII; (b) loss of privacy; (c) continuous imminent and impending injury arising from the increased risk of financial and identity fraud and theft; (d) lost time and expenses to engage in mitigation efforts; and (e) dealing with increasing spam calls, texts, and emails.

37872933.1

**Answer: Denied.**

247.    Due to the Data Breach and the significant delay in notification, Plaintiff Lane anticipates spending considerable additional time and money on an ongoing basis to try to mitigate and address the harms caused by the Data Breach.

**Answer: Manpower lacks information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies the same.**

248.    Since the Data Breach, Plaintiff Lane is particularly concerned about the exposure of her Social Security number to criminal actors, as this number will always be tied to her identity and can be used to commit various types of fraud and identity theft for the remainder of her lifetime.

**Answer: Manpower lacks information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies the same.**

249.    As a result of the Data Breach, Plaintiff Lane has experienced increased anxiety, stress, and fear knowing that her PII is in the hands of ransomware criminals who have demonstrated their willingness to exploit such data for financial gain.

**Answer: Denied.**

250.    Plaintiff Lane has a continuing interest in ensuring that her PII, which remains in Defendant's possession, is protected and safeguarded from future breaches.

**Answer: Denied.**

*Latoya Middleton*

251.    Plaintiff Latoya Middleton utilized Defendant's staffing services in connection with seeking employment opportunities in 2018, at which time she was required to provide extensive personal and financial information as a condition of receiving placement services.

37872933.1

**Answer: Manpower admits only that Latoya Middleton was a former employee of Manpower and that Manpower receives and stores information in the course of its business. Manpower denies the remaining allegations contained in this paragraph.**

252.    As a condition of receiving staffing services from Manpower, Plaintiff Middleton was required to provide her PII and other private information to Defendant for employment verification, background check, and payroll purposes, including but not limited to, her name, address, Social Security number, date of birth, driver's license number, employment history, and banking information.

**Answer: Manpower admits only that it receives and stores information in the course of its business. Manpower denies the remaining balance of the allegations contained in this paragraph.**

253.    Plaintiff Middleton provided this PII with the reasonable expectation that Defendant would protect and secure this information from unauthorized access and disclosure, particularly given that Defendant was legally obligated to safeguard applicant and employee records under federal and state employment laws.

**Answer: Manpower lacks information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies the same.**

254.    According to the notice Plaintiff Middleton received from Manpower dated August 11, 2025, Plaintiff Middleton's PII was compromised in the Data Breach.

**Answer: Manpower admits only that Plaintiffs are relying on certain documents, but refers to the contents of those documents for their content and meaning. Manpower denies as untrue any allegations contained in this paragraph that are contrary to or inconsistent with the terms of those documents.**

37872933.1

255. Plaintiff Middleton reasonably expected and understood that Defendant would implement, at a minimum, industry standard precautions to protect, maintain, and safeguard her PII from unauthorized users or disclosure, and would timely notify her of any data security incidents.

**Answer: Manpower lacks information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies the same.**

256. Plaintiff Middleton had no choice but to provide her information to Defendant as it was mandatory for receiving staffing services, and she relied on Defendant's representations regarding data security.

**Answer: Manpower lacks information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies the same.**

257. Plaintiff Middleton is very careful about sharing her sensitive PII. She has never knowingly transmitted unencrypted sensitive PII over the internet or any other unsecured source. Furthermore, Plaintiff Middleton stores any documents containing sensitive information in a safe and secure location or destroys the documents.

**Answer: Manpower lacks information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies the same.**

258. As a result of the Data Breach, Plaintiff Middleton has made reasonable efforts to mitigate the impact, including researching the Data Breach, reviewing financial statements, monitoring credit information, and remaining vigilant for signs of identity theft.

**Answer: Manpower lacks information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies the same.**

37872933.1

259.    Plaintiff Middleton has spent significant time responding to the Data Breach and will continue to spend valuable time they otherwise would have spent on other activities, including but not limited to work and/or recreation.

**Answer: Manpower lacks information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies the same.**

260.    Plaintiff Middleton suffered actual injury from having them sensitive information exposed and/or stolen as a result of the Data Breach including, but not limited to: (a) damages to and diminution in the value of them PII; (b) loss of privacy; (c) continuous imminent and impending injury arising from the increased risk of financial and identity fraud and theft; (d) lost time and expenses to engage in mitigation efforts; and (e) dealing with increasing spam calls, texts, and emails.

**Answer: Denied.**

261.    Due to the Data Breach and the significant delay in notification, Plaintiff Middleton anticipates spending considerable additional time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach.

**Answer: Manpower lacks information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies the same.**

262.    Since the Data Breach, Plaintiff Middleton is particularly concerned about the exposure of her Social Security number to criminal actors, as this number will always be tied to her identity and can be used to commit various types of fraud and identity theft for the remainder of her lifetime.

**Answer: Manpower lacks information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies the same.**

37872933.1

263.    Plaintiff Middleton has experienced increased anxiety, stress, and fear knowing that her PII is in the hands of ransomware criminals who have demonstrated their willingness to exploit such data for financial gain.

**Answer: Denied.**

264.    Plaintiff Middleton has a continuing interest in ensuring that her PII, which remains in Defendant's possession, is protected and safeguarded from future breaches.

**Answer: Denied.**

*Christopher Platter*

265.    Plaintiff Christopher Platter utilized Defendant's staffing services in connection with seeking employment, at which time he was required to provide extensive private information as a condition of receiving placement services.

**Answer: Manpower admits only that Christopher Platter was a former employee of Manpower and that Manpower receives and stores information in the course of its business. Manpower denies the remaining allegations contained in this paragraph.**

266.    Plaintiff Platter provided his PII with the reasonable expectation that Defendant would protect and secure this information from unauthorized access and disclosure, particularly given that Defendant was legally obligated to safeguard applicant and employee records under federal and state employment laws.

**Answer: Manpower lacks information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies the same.**

267.    According to the notice Plaintiff Platter received from Manpower dated August 11, 2025, his PII was compromised in the Data Breach.

67

**Answer: Manpower admits only that Plaintiffs are relying on certain documents, but refers to the contents of those documents for their content and meaning. Manpower denies as untrue any allegations contained in this paragraph that are contrary to or inconsistent with the terms of those documents.**

268.    Plaintiff Platter reasonably expected and understood that Defendant would implement, at a minimum, industry standard precautions to protect, maintain, and safeguard his PII from unauthorized users or disclosure, and would timely notify his of any data security incidents.

**Answer: Manpower lacks information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies the same.**

269.    Plaintiff Platter is very careful about sharing his sensitive PII. He has never knowingly transmitted unencrypted sensitive PII over the internet or any other unsecured source. Furthermore, Plaintiff Platter stores any documents containing sensitive information in a safe and secure location or destroys the documents.

**Answer: Manpower lacks information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies the same.**

270.    As a result of the Data Breach, Plaintiff Platter has made reasonable efforts to mitigate the impact, including researching the Data Breach, reviewing financial statements, monitoring credit information, and remaining vigilant for signs of identity theft.

**Answer: Manpower lacks information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies the same.**

37872933.1

271.    Plaintiff Platter has spent significant time responding to the Data Breach and will continue to spend valuable time he otherwise would have spent on other activities, including but not limited to work and/or recreation.

**Answer: Manpower lacks information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies the same.**

272.    Plaintiff Platter suffered actual injury from having his sensitive information exposed and stolen in the Data Breach including, but not limited to: (a) damages to and diminution in the value of them PII; (b) loss of privacy; (c) continuous imminent and impending injury arising from the increased risk of financial and identity fraud and theft; (d) lost time and expenses to engage in mitigation efforts; and (e) dealing with increasing spam calls, texts, and emails.

**Answer: Denied.**

273.    Due to the Data Breach and the significant delay in notification, Plaintiff Platter anticipates spending considerable additional time and money on an ongoing basis to try to mitigate and address the harms caused by the Data Breach.

**Answer: Manpower lacks information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies the same.**

274.    Since the Data Breach, Plaintiff Platter is particularly concerned about the exposure of his Social Security number to criminal actors, as this number will always be tied to his identity and can be used to commit various types of fraud and identity theft for the remainder of his lifetime.

**Answer: Manpower lacks information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies the same.**

37872933.1

275.    As a result of the Data Breach, Plaintiff Platter has experienced increased anxiety, stress, and fear knowing that his PII is in the hands of ransomware criminals who have demonstrated their willingness to exploit such data for financial gain.

**Answer: Denied.**

276.    Plaintiff Platter has a continuing interest in ensuring that his PII, which remains in Defendant's possession, is protected and safeguarded from future breaches.

**Answer: Denied.**

## CLASS ACTION ALLEGATIONS

277.    Plaintiffs bring this action pursuant to Fed. R. Civ. P. 23 on behalf of themselves and all others similarly situated.

**Answer: Manpower admits only that Plaintiffs seek to certify a class action in this lawsuit. Manpower denies that Plaintiffs can meet the requirements to certify a class action. Manpower denies the balance of the allegations contained in this paragraph.**

278.    Plaintiffs seek to represent a class of persons defined as follows:

> All individuals residing in the United States whose PII was compromised by the Data Breach (the "Class").

**Answer: Manpower admits only that Plaintiffs seek to certify a class action in this lawsuit. Manpower denies that Plaintiffs can meet the requirements to certify a class action. Manpower denies the balance of the allegations contained in this paragraph.**

279.    The following people are excluded from the Class: (i) any judge or magistrate presiding over this action and members of their families; (ii) Defendant, Defendant's subsidiaries, parents, successors, predecessors, affiliated entities, and any entity in which Defendant or its parent has a controlling interest, and its current or former officers and directors; (iii) persons who properly execute and file a timely request for exclusion from the Class; (iv) persons whose claims in this

37872933.1

matter have been finally adjudicated on the merits or otherwise released; (v) Plaintiffs' counsel and Defendant's counsel; and (vi) the legal representatives, successors, and assigns of any such excluded persons.

**Answer: Manpower admits only that Plaintiffs seek to certify a class action in this lawsuit. Manpower denies that Plaintiffs can meet the requirements to certify a class action. Manpower denies the balance of the allegations contained in this paragraph.**

280. Numerosity: The exact number of members of the Class is unknown but, upon information and belief, it is estimated to number in the tens or hundreds of thousands at this time, and individual joinder in this case is impracticable. Members of the Class can be easily identified through Defendant's records and objective criteria permitting self-identification in response to notice, and notice can be provided through techniques similar to those customarily used in other data breach, consumer breach of contract, unlawful trade practices, and class action controversies.

**Answer: Manpower admits only that Plaintiffs seek to certify a class action in this lawsuit. Manpower denies that Plaintiffs can meet the requirements to certify a class action. Manpower denies the balance of the allegations contained in this paragraph.**

281. Typicality: Plaintiffs' claims are typical of the claims of other members of the Class in that Plaintiffs, and the members of the Class, sustained damages arising out of Defendant's Data Breach, wrongful conduct and misrepresentations, false statements, concealment, and unlawful practices, and Plaintiffs and members of the Class sustained similar injuries and damages, as a result of Defendant's uniform illegal conduct.

**Answer: Manpower admits only that Plaintiffs seek to certify a class action in this lawsuit. Manpower denies that Plaintiffs can meet the requirements to certify a class action. Manpower denies the balance of the allegations contained in this paragraph.**

37872933.1

282.    Adequacy: Plaintiffs will fairly and adequately represent and protect the interests of the Class and has retained counsel competent and experienced in complex class actions to vigorously prosecute this action on behalf of the Class. Plaintiffs have no interests that conflict with, or are antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiffs. **Answer: Manpower admits only that Plaintiffs seek to certify a class action in this lawsuit. Manpower denies that Plaintiffs can meet the requirements to certify a class action. Manpower denies the balance of the allegations contained in this paragraph.**

283.    Commonality and Predominance: There are many questions of law and fact common to the claims of Plaintiffs and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

   a.    Whether Defendant violated the laws asserted herein, including statutory privacy laws;

   b.    Whether Defendant had a duty to use reasonable care to safeguard Plaintiffs' and Class Members' PII;

   c.    Whether Defendant breached the duty to use reasonable care to safeguard Plaintiffs' and Class Members' PII;

   d.    Whether Defendant breached its contractual promises to safeguard Plaintiffs' and Class Members' PII;

   e.    Whether Defendant knew or should have known about the inadequacies of its data security policies and system and the dangers associated with storing PII;

   f.    Whether Defendant failed to use reasonable care and commercially

72

37872933.1

reasonable methods to safeguard and protect Plaintiffs' and Class Members' PII from unauthorized release and disclosure;

g. Whether the proper data security measures, policies, procedures, and protocols were in place and operational within Defendant's computer systems to safeguard and protect Plaintiffs' and Class Members' PII from unauthorized release and disclosure;

h. Whether Defendant took reasonable measures to determine the extent of the Data Breach after it was discovered;

i. Whether Defendant's method of informing Plaintiffs and other members of the Class was unreasonable;

j. Whether Defendant's conduct was likely to deceive the public;

k. Whether Defendant is liable for negligence or gross negligence;

l. Whether Defendant's conduct, practices, statements, and representations about the Data Breach of the PII violated applicable state laws;

m. Whether Plaintiffs and Class Members were injured as a proximate cause or result of the Data Breach;

n. Whether Plaintiffs and members of the Class were damaged as a proximate cause of the Data Breach;

o. Whether Defendant's practices and representations related to the Data Breach breached implied contracts with Plaintiffs and members of the Class;

p. What the proper measure of damages is; and

q. Whether Plaintiffs and members of the Class are entitled to

37872933.1

restitutionary, injunctive, declaratory, or other relief.

**Answer: Manpower admits only that Plaintiffs seek to certify a class action in this lawsuit. Manpower denies that Plaintiffs can meet the requirements to certify a class action. Manpower denies the balance of the allegations contained in this paragraph.**

284.    Superiority: This cause is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy as joinder of all parties is impracticable. The damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendant's misconduct. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered, and uniformity of decisions ensured.

**Answer: Manpower admits only that Plaintiffs seek to certify a class action in this lawsuit. Manpower denies that Plaintiffs can meet the requirements to certify a class action. Manpower denies the balance of the allegations contained in this paragraph.**

285.    A class action is superior to individual litigation because:

   a.   The amount of damages available to an individual plaintiff is insufficient

        to make litigation addressing Defendant's conduct economically feasible

in the absence of the class action procedural device;

b.  Individualized litigation would present a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system; and

c.  The class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economy of scale, and comprehensive supervision by a single court.

**Answer: Manpower admits only that Plaintiffs seek to certify a class action in this lawsuit. Manpower denies that Plaintiffs can meet the requirements to certify a class action. Manpower denies the balance of the allegations contained in this paragraph.**

286.  Likewise, particular issues are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

a.  Whether Defendant failed to timely and adequately notify the public of the Data Breach;

b.  Whether Defendant owed a legal duty to Plaintiffs and the Class to exercise due care in collecting, storing, and safeguarding their PII;

c.  Whether Defendant's security measures to protect its data systems were reasonable in light of best practices recommended by data security experts;

d.  Whether Defendant's failure to institute adequate protective security measures amounted to negligence;

e.  Whether Defendant failed to take commercially reasonable steps to safeguard PII in its possession; and

37872933.1

  f. Whether adherence to FTC data security recommendations, and measures

   recommended by data security experts would have reasonably prevented

   the Data Breach.

**Answer: Manpower admits only that Plaintiffs seek to certify a class action in this lawsuit. Manpower denies that Plaintiffs can meet the requirements to certify a class action. Manpower denies the balance of the allegations contained in this paragraph.**

287. Finally, all members of the proposed Class are readily ascertainable. Defendant has access to Class Members' names and addresses affected by the Data Breach. Class Members have already been preliminarily identified and sent notice of the Data Breach by Defendant.

**Answer: Manpower admits only that Plaintiffs seek to certify a class action in this lawsuit. Manpower denies that Plaintiffs can meet the requirements to certify a class action. Manpower denies the balance of the allegations contained in this paragraph.**

**FIRST CAUSE OF ACTION**
**Negligence**
**(On Behalf of Plaintiffs & the Class)**

288. Plaintiffs re-allege and incorporate by reference the allegations in paragraphs 1-287 as if fully set forth herein.

**Answer: Manpower restates and incorporates all preceding responses as if fully set forth herein.**

289. Defendant required Plaintiffs and Class Members to provide their PII to work with or receive employment, employment placing, or staffing services from Defendant.

**Answer: Manpower admits only that it receives and stores information in the course of its business. Manpower denies the remaining allegations contained in this paragraph.**

37872933.1

290.    By collecting and storing this data in its computer system and network, and sharing it and using it for commercial gain, Defendant owed a duty of care to use reasonable means to secure and safeguard its computer system—and Plaintiffs' and Class Members' PII held within it—to prevent disclosure of the information, and to safeguard the information from theft. Defendant's duty included a responsibility to implement processes by which it could detect a breach of its security systems reasonably quickly and to give prompt notice to those affected in the case of a data breach.

**Answer: The allegations in this paragraph are legal conclusions of the pleader to which no response is required. To the extent an answer is required, Manpower states that it used commercially reasonable measures to protect its network. Manpower denies the remaining allegations contained in this paragraph.**

291.    Defendant owed a duty of care to Plaintiffs and Class Members to provide data security consistent with industry standards and other requirements discussed herein, and to ensure that its systems and networks, the personnel responsible for them, and its information technology partners adequately protected the PII.

**Answer: The allegations in this paragraph are legal conclusions of the pleader to which no response is required. To the extent an answer is required, Manpower states that it used commercially reasonable measures to protect its network. Manpower denies the remaining allegations contained in this paragraph.**

292.    Plaintiffs and the Class are a well-defined, foreseeable, and probable group of clients and employees that Defendant was aware, or should have been aware, could be injured by its inadequate data security measures.

**Answer: Denied.**

37872933.1

293.    A large repository of highly valuable personal information is a foreseeable target for cybercriminals looking to steal and profit from that sensitive information. Defendant knew or should have known that, given its repository of a host of PII for thousands of clients posed a significant risk of being targeted for a data breach. Thus, Defendant had a duty to reasonably safeguard Plaintiffs' and Class Members' data by implementing reasonable data security measures to protect against data breaches. The foreseeable harm to Plaintiffs and the Class of inadequate data security created a duty to act reasonably and safeguard the PII.

**Answer: The allegations in this paragraph are legal conclusions of the pleader to which no response is required. To the extent an answer is required, Manpower states that it used commercially reasonable measures to protect its network. Manpower denies the remaining allegations contained in this paragraph.**

294.    After all, PII is highly valuable, and Defendant knew, or should have known, the risk in obtaining, using, handling, emailing, and storing the PII of Plaintiffs and Class Members. Thus, Defendant knew, or should have known, the importance of exercising reasonable care in handling the PII entrusted to them.

**Answer: The allegations in this paragraph are legal conclusions of the pleader to which no response is required. To the extent an answer is required, Manpower states that it used commercially reasonable measures to protect its network. Manpower denies the remaining allegations contained in this paragraph.**

295.    Defendant's duty of care to use reasonable security measures also arose as a result of the special relationship that existed between Defendant and its clients, which is recognized by laws and regulations, as well as common law. Defendant was in a superior position to ensure that

78

37872933.1

its systems were sufficient to protect against the foreseeable risk of harm to Class Members from a data breach.

**Answer: The allegations in this paragraph are legal conclusions of the pleader to which no response is required. To the extent an answer is required, Manpower states that it used commercially reasonable measures to protect its network. Manpower denies the remaining allegations contained in this paragraph.**

296.    In addition, Defendant has a duty to employ reasonable security measures under Section 5 of the Federal Trade Commission Act, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect confidential data.

**Answer: The allegations in this paragraph are legal conclusions of the pleader to which no response is required. To the extent an answer is required, Manpower states that it used commercially reasonable measures to protect its network. Manpower denies the remaining allegations contained in this paragraph.**

297.    Defendant's duty to use reasonable care in protecting confidential data arose not only as a result of the statutes and regulations described above, but also because Defendant is bound by industry standards to protect confidential PII.

**Answer: The allegations in this paragraph are legal conclusions of the pleader to which no response is required. To the extent an answer is required, Manpower states that it used commercially reasonable measures to protect its network. Manpower denies the remaining allegations contained in this paragraph.**

37872933.1

298.     Defendant breached its duties, and thus was negligent, by failing to use reasonable measures to protect Plaintiffs' and Class Members' PII. The specific negligent acts and omissions committed by Defendant include, but are not limited to, the following:

a.  Failing to adopt, implement, and maintain adequate security measures to safeguard Plaintiffs' and Class Members' PII;

b.  Failing to adequately monitor the security of its networks and systems;

c.  Failing to have in place mitigation policies and procedures;

d.  Allowing unauthorized access to Plaintiffs' and Class Members' PII;

e.  Failing to detect in a timely manner that Plaintiffs' and Class Members' PII had been compromised; and

f.  Failing to timely notify Plaintiffs and Class Members about the Data Breach so that they could take appropriate steps to mitigate the potential for identity theft and other damages.

**Answer: Denied.**

299.     Defendant breached its duty to exercise reasonable care in safeguarding and protecting Plaintiffs' and the Class Members' PII by failing to adopt, implement, and maintain adequate security measures to safeguard that information, despite the known risk of data breaches, and allowing unauthorized access to Plaintiffs' and Class Members' PII.

**Answer: Denied.**

300.     The failure of Defendant to comply with industry standards and federal regulations evidences Defendant's negligence in failing to exercise reasonable care in safeguarding and protecting Plaintiffs' and Class Members' PII.

**Answer: Denied.**

37872933.1

301.    But for Defendant's wrongful and negligent breach of its duties to Plaintiffs and Class Members, their PII would not have been compromised, stolen, and viewed by unauthorized persons. Defendant's negligence was a direct and legal cause of the theft of the PII of Plaintiffs and Class Members and all resulting damages.

**Answer: Denied.**

302.    It was foreseeable that Defendant's failure to use reasonable measures to protect Plaintiffs' and Class Members' PII would result in injury to Plaintiffs and Class Members. Furthermore, the breach of security was reasonably foreseeable given the known high frequency of cyberattacks and data breaches.

**Answer: Denied.**

303.    It was therefore foreseeable that the failure to adequately safeguard Plaintiffs' and Class Members' PII would result in one or more types of injuries to Plaintiffs and Class Members.

**Answer: Denied.**

304.    As a result of this misconduct by Defendant, the PII of Plaintiffs and Class Members was compromised, placing them at a greater risk of identity theft and of their PII being disclosed to third parties without the consent of Plaintiffs and the Class.

**Answer: Denied.**

305.    Plaintiffs and Class Members are entitled to compensatory and consequential damages suffered as a result of the Data Breach.

**Answer: Denied.**

306.    Plaintiffs and Class Members are also entitled to injunctive relief requiring Defendant to, e.g., (i) strengthen its data security systems and monitoring procedures; (ii) submit

37872933.1

to future annual audits of those systems and monitoring procedures; and (iii) continue to provide adequate credit monitoring to Plaintiffs and all Class Members.

**Answer: Denied.**

**SECOND CAUSE OF ACTION**
**Negligence *Per Se***
**(On Behalf of Plaintiffs & the Class)**

307.     **Answer: Manpower restates and incorporates all preceding responses as if fully set forth herein.**

308.     **Answer: On March 19, 2026, Plaintiffs' *negligence per se* claim was dismissed per the Court's Order and therefore no response is required (ECF No. 25).**

309.     **Answer: On March 19, 2026, Plaintiffs' *negligence per se* claim was dismissed per the Court's Order and therefore no response is required (ECF No. 25).**

310.     **Answer: On March 19, 2026, Plaintiffs' *negligence per se* claim was dismissed per the Court's Order and therefore no response is required (ECF No. 25).**

311.     **Answer: On March 19, 2026, Plaintiffs' *negligence per se* claim was dismissed per the Court's Order and therefore no response is required (ECF No. 25).**

312.     **Answer: On March 19, 2026, Plaintiffs' *negligence per se* claim was dismissed per the Court's Order and therefore no response is required (ECF No. 25).**

313.     **Answer: On March 19, 2026, Plaintiffs' *negligence per se* claim was dismissed per the Court's Order and therefore no response is required (ECF No. 25).**

314.     **Answer: On March 19, 2026, Plaintiffs' *negligence per se* claim was dismissed per the Court's Order and therefore no response is required (ECF No. 25).**

315.     **Answer: On March 19, 2026, Plaintiffs' *negligence per se* claim was dismissed per the Court's Order and therefore no response is required (ECF No. 25).**

316.    **Answer: On March 19, 2026, Plaintiffs'** *negligence per se* **claim was dismissed per the Court's Order and therefore no response is required (ECF No. 25).**

317.    **Answer: On March 19, 2026, Plaintiffs'** *negligence per se* **claim was dismissed per the Court's Order and therefore no response is required (ECF No. 25).**

318.    **Answer: On March 19, 2026, Plaintiffs'** *negligence per se* **claim was dismissed per the Court's Order and therefore no response is required (ECF No. 25).**

319.    **Answer: On March 19, 2026, Plaintiffs'** *negligence per se* **claim was dismissed per the Court's Order and therefore no response is required (ECF No. 25).**

320.    **Answer: On March 19, 2026, Plaintiffs'** *negligence per se* **claim was dismissed per the Court's Order and therefore no response is required (ECF No. 25).**

## THIRD CAUSE OF ACTION
### Invasion of Privacy
### (On Behalf of Plaintiffs & the Class)

321.    **Answer: Manpower restates and incorporates all preceding responses as if fully set forth herein.**

322.    **Answer: On March 19, 2026, Plaintiffs' invasion of privacy claim was dismissed per the Court's Order and therefore no response is required (ECF No. 25).**

323.    **Answer: On March 19, 2026, Plaintiffs' invasion of privacy claim was dismissed per the Court's Order and therefore no response is required (ECF No. 25).**

324.    **Answer: On March 19, 2026, Plaintiffs' invasion of privacy claim was dismissed per the Court's Order and therefore no response is required (ECF No. 25).**

325.    **Answer: On March 19, 2026, Plaintiffs' invasion of privacy claim was dismissed per the Court's Order and therefore no response is required (ECF No. 25).**

37872933.1

326.    **Answer: On March 19, 2026, Plaintiffs' invasion of privacy claim was dismissed per the Court's Order and therefore no response is required (ECF No. 25).**

327.    **Answer: On March 19, 2026, Plaintiffs' invasion of privacy claim was dismissed per the Court's Order and therefore no response is required (ECF No. 25).**

328.    **Answer: On March 19, 2026, Plaintiffs' invasion of privacy claim was dismissed per the Court's Order and therefore no response is required (ECF No. 25).**

329.    **Answer: On March 19, 2026, Plaintiffs' invasion of privacy claim was dismissed per the Court's Order and therefore no response is required (ECF No. 25).**

330.    **Answer: On March 19, 2026, Plaintiffs' invasion of privacy claim was dismissed per the Court's Order and therefore no response is required (ECF No. 25).**

331.    **Answer: On March 19, 2026, Plaintiffs' invasion of privacy claim was dismissed per the Court's Order and therefore no response is required (ECF No. 25).**

332.    **Answer: On March 19, 2026, Plaintiffs' invasion of privacy claim was dismissed per the Court's Order and therefore no response is required (ECF No. 25).**

333.    **Answer: On March 19, 2026, Plaintiffs' invasion of privacy claim was dismissed per the Court's Order and therefore no response is required (ECF No. 25).**

**FOURTH CAUSE OF ACTION**
**Breach of Implied Contract**
**(On Behalf of Plaintiffs & the Class)**

334.    **Answer: Manpower restates and incorporates all preceding responses as if fully set forth herein.**

335.    **Answer: On March 19, 2026, Plaintiffs' breach of implied contract claim was dismissed per the Court's Order and therefore no response is required (ECF No. 25).**

37872933.1

336.    **Answer: On March 19, 2026, Plaintiffs' breach of implied contract claim was dismissed per the Court's Order and therefore no response is required (ECF No. 25).**

337.    **Answer: On March 19, 2026, Plaintiffs' breach of implied contract claim was dismissed per the Court's Order and therefore no response is required (ECF No. 25).**

338.    **Answer: On March 19, 2026, Plaintiffs' breach of implied contract claim was dismissed per the Court's Order and therefore no response is required (ECF No. 25).**

339.    **Answer: On March 19, 2026, Plaintiffs' breach of implied contract claim was dismissed per the Court's Order and therefore no response is required (ECF No. 25).**

340.    **Answer: On March 19, 2026, Plaintiffs' breach of implied contract claim was dismissed per the Court's Order and therefore no response is required (ECF No. 25).**

341.    **Answer: On March 19, 2026, Plaintiffs' breach of implied contract claim was dismissed per the Court's Order and therefore no response is required (ECF No. 25).**

342.    **Answer: On March 19, 2026, Plaintiffs' breach of implied contract claim was dismissed per the Court's Order and therefore no response is required (ECF No. 25).**

343.    **Answer: On March 19, 2026, Plaintiffs' breach of implied contract claim was dismissed per the Court's Order and therefore no response is required (ECF No. 25).**

344.    **Answer: On March 19, 2026, Plaintiffs' breach of implied contract claim was dismissed per the Court's Order and therefore no response is required (ECF No. 25).**

345.    **Answer: On March 19, 2026, Plaintiffs' breach of implied contract claim was dismissed per the Court's Order and therefore no response is required (ECF No. 25).**

346.    **Answer: On March 19, 2026, Plaintiffs' breach of implied contract claim was dismissed per the Court's Order and therefore no response is required (ECF No. 25).**

37872933.1

347.    **Answer: On March 19, 2026, Plaintiffs' breach of implied contract claim was dismissed per the Court's Order and therefore no response is required (ECF No. 25).**

348.    **Answer: On March 19, 2026, Plaintiffs' breach of implied contract claim was dismissed per the Court's Order and therefore no response is required (ECF No. 25).**

349.    **Answer: On March 19, 2026, Plaintiffs' breach of implied contract claim was dismissed per the Court's Order and therefore no response is required (ECF No. 25).**

350.    **Answer: On March 19, 2026, Plaintiffs' breach of implied contract claim was dismissed per the Court's Order and therefore no response is required (ECF No. 25).**

## FIFTH CAUSE OF ACTION
### Unjust Enrichment
### (On Behalf of Plaintiffs & the Class)

351.    **Answer: Manpower restates and incorporates all preceding responses as if fully set forth herein.**

352.    **Answer: On March 19, 2026, Plaintiffs' unjust enrichment claim was dismissed per the Court's Order and therefore no response is required (ECF No. 25).**

353.    **Answer: On March 19, 2026, Plaintiffs' unjust enrichment claim was dismissed per the Court's Order and therefore no response is required (ECF No. 25).**

354.    **Answer: On March 19, 2026, Plaintiffs' unjust enrichment claim was dismissed per the Court's Order and therefore no response is required (ECF No. 25).**

355.    **Answer: On March 19, 2026, Plaintiffs' unjust enrichment claim was dismissed per the Court's Order and therefore no response is required (ECF No. 25).**

356.    **Answer: On March 19, 2026, Plaintiffs' unjust enrichment claim was dismissed per the Court's Order and therefore no response is required (ECF No. 25).**

37872933.1

357.    **Answer: On March 19, 2026, Plaintiffs' unjust enrichment claim was dismissed per the Court's Order and therefore no response is required (ECF No. 25).**

358.    **Answer: On March 19, 2026, Plaintiffs' unjust enrichment claim was dismissed per the Court's Order and therefore no response is required (ECF No. 25).**

359.    **Answer: On March 19, 2026, Plaintiffs' unjust enrichment claim was dismissed per the Court's Order and therefore no response is required (ECF No. 25).**

360.    **Answer: On March 19, 2026, Plaintiffs' unjust enrichment claim was dismissed per the Court's Order and therefore no response is required (ECF No. 25).**

361.    **Answer: On March 19, 2026, Plaintiffs' unjust enrichment claim was dismissed per the Court's Order and therefore no response is required (ECF No. 25).**

WHEREFORE Manpower respectfully requests this Court dismiss Plaintiffs' Complaint and award Manpower its costs, expenses, interest and attorneys' fees, and any and all further relief in favor of Manpower this Court deems just under the circumstances.

Dated: April 2, 2026,                          Respectfully Submitted,

*/s/ Timothy J. Lowe*
Timothy J. Lowe (P68669)
Mitchell A. Capp (P84197)
McDonald Hopkins PLC
39533 Woodward Avenue, Suite 318
Bloomfield Hills, Michigan 48304
tlowe@mcdonaldhopkins.com
mcapp@mcdonaldhopkins.com
*Counsel for Manpower of Lansing, MI, Inc.*

## AFFIRMATIVE DEFENSES

Defendant Manpower of Lansing, MI, Inc. ("**Manpower**"), through its undersigned counsel, asserts the following affirmative and other defenses to Plaintiffs Sara Conrad, Christine Cooper, Fredrick Cooper, Deanna Ghinelli, Courtney Howard, Lorna Lane, Latoya Middleton, and

37872933.1

Christopher Platter (collectively "**Plaintiffs**") Consolidated Class Action Complaint. By identifying the defenses set forth below, Manpower does not concede that it bears the burden of proving each defense. Manpower's burdens will be determined as a matter of law.

Manpower states that it lacks sufficient knowledge and information to form a belief as to the truth of the numerous allegations contained in Plaintiffs' Complaint, and therefore denies all such allegations, and until it avails itself of appropriate discovery, it cannot determine whether any or all of the Affirmative and/or Special Defenses will be asserted before or at trial. In order to preserve Manpower's right to assert the affirmatives defenses, and to avoid any waiver, they are set forth herein. Manpower reserves the right to assert Affirmative and/or Special Defenses that may become apparent during the course of discovery.

1. Plaintiffs and the putative classes' claims are or may be barred and fail, in whole or in part, because Plaintiffs have not suffered any damages.

2. Plaintiffs and the putative classes' claims are or may be barred and fail, in whole or in part, due to Plaintiffs' failure to mitigate their alleged damages, which are not admitted.

3. Plaintiffs and the putative classes' claims are or may be barred and fail, in whole or in part, due to an intervening or superseding cause, including but not limited to a previous data breach of cyberattack.

4. Plaintiffs and the putative classes' claims are or may be barred and fail, in whole or in part, because of lacking legal or factual causation.

5. Plaintiffs and the putative classes' claims are or may be barred and fail, in whole or in part, due to Plaintiffs and the putative classes' contributory negligence.

37872933.1

6. Plaintiffs and the putative classes' claims are or may be barred and fail, in whole or in part, because Plaintiffs' purported claims for remedies and/or damages are barred and/or limited by contract.

7. Plaintiffs and the putative classes' claims are or may be barred and fail, in whole or in part, through their own actions or inactions.

8. Plaintiffs and the putative classes' claims are or may be barred and fail, in whole or in part, due to the doctrines of laches, unclean hands and/or estoppel.

9. Plaintiffs and the putative classes' claims are or may be barred and fail, in whole or in part, through the actions or inactions of third parties.

10. Manpower hereby gives notice to Plaintiffs that until Manpower avails itself of its right to discovery, it cannot determine whether the above-stated affirmative and other defenses will be asserted at trial, but in order to preserve its rights to assert the above-stated defenses and to avoid waiver of any defense, it has asserted the defenses herein.

11. Manpower reserves the right to modify its affirmative and other defenses and/or add such other defenses that may become known through the course of its investigation and discovery in this civil action.

Dated: April 2, 2026,

Respectfully Submitted,

/s/ Timothy J. Lowe
Timothy J. Lowe (P68669)
Mitchell A. Capp (P84197)
McDonald Hopkins PLC
39533 Woodward Avenue, Suite 318
Bloomfield Hills, Michigan 48304
tlowe@mcdonaldhopkins.com
*Counsel for Manpower of Lansing, MI, Inc.*

89

37872933.1

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on April 2, 2026April 2, 2026, I electronically filed the above document(s) with the Clerk of the Court using the ECF System, which will provide electronic copies to counsel of record.

*/s/ Timothy J. Lowe*
Timothy J. Lowe (P68669)
*Counsel for Manpower of Lansing, MI, Inc.*

37872933.1